COMMONWEALTH *vs.* ADAM KELLY.

Middlesex. February 9, 1994. - March 11, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Firearms. Practice, Criminal*, Argument by prosecutor.

At a criminal trial, the prosecutor's closing argument contained improper comments that went beyond the evidence and fair inferences therefrom and that were to the effect that the defendant's failure to produce evidence made the defendant's case not believable; where such comments could have influenced the jury's verdict, a new trial was required. [270-272]

INDICTMENT found and returned in the Superior Court Department on May 21, 1991.

The case was tried before *David M. Roseman*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Maureen Brodoff* for the defendant.

*David W. Cunis*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. We granted the defendant's application for further appellate review to decide whether the prosecutor's closing argument contained improper remarks and, if so, whether there was prejudice. In an unpublished memorandum of decision entered pursuant to its Rule 1:28, 35 Mass. App. Ct. 1104 (1993), the Appeals Court concluded that the prosecutor had made improper remarks, but that the defendant had incurred no prejudice. We conclude that the prosecutor's closing contained improper comments that could have influenced the jury to return their verdict finding the defendant guilty of carrying a firearm without a license in violation

of G. L. c. 269, § 10 (*a*) (1992 ed.).[1] Accordingly, we reverse the judgment of conviction, set aside the verdict, and order a new trial.

The Commonwealth presented evidence through several witnesses which outlined its case against the defendant in the following way. On December 29, 1990, at about 1:45 A.M. a Lowell police officer, Daniel J. Duffy, a seventeen-year member of the force, observed two vehicles, a pickup truck and a Cadillac automobile, stopped in the eastbound travel lane of Hale Street near a trestle bridge. As Duffy approached the vehicles in his police cruiser from the opposite direction, he saw two men standing in front of the vehicles and another man, later identified as the defendant, sitting in the passenger seat of the pickup truck. Once the individuals standing outside observed Duffy, they returned to their respective vehicles and pulled away.

As Officer Duffy passed the pickup truck, he heard what he believed to be a gunshot come from the vicinity of the truck. Duffy activated his blue lights and siren, radioed for assistance, and reversed the direction of his cruiser in order to pursue the vehicles.

Before the vehicles reached the trestle bridge, the driver of the Cadillac changed direction. Officer Duffy, however, followed the pickup truck onto the trestle bridge. At this point, Duffy testified, he noticed the driver of the truck throw an object onto the left side of the road. After the pickup truck crossed the bridge, Duffy testified, he saw the passenger in the pickup truck (the defendant) throw an object into the yard of a house on the right side of the road. Shortly thereafter, the driver of the pickup truck pulled over.[2]

---

[1] On this conviction, the defendant was sentenced to from three to five years at the Massachusetts Correctional Institution, Cedar Junction.

[2] The driver of the truck was subsequently identified as Kenneth Murnane. Murnane was also charged with carrying a firearm without a license in violation of G. L. c. 269, § 10 (*a*) (1992 ed.), and with the additional offense of possession of a blackjack. Murnane was tried with the defendant and convicted on both charges. Murnane's case is not before us.

As soon as additional police assistance arrived, officers approached the pickup truck and made initial inquiries of the defendant and the driver. Duffy and another Lowell police officer, Sergeant William F. Busby, a ten-year member of the force, then searched for the object which the defendant had thrown from the truck. Shortly thereafter, Duffy found a .25 caliber handgun, containing a clip with six rounds, in the yard of the house. The defendant and the driver were then placed under arrest and taken to the Lowell police station.

Officer Duffy and Sergeant Busby then returned to the bridge to search for the other object which had been thrown from the pickup truck. After this search proved unsuccessful, Duffy and Busby decided to return to the police station. While enroute, Busby noticed the Cadillac, which Duffy had previously observed. After a short pursuit, Busby apprehended the Cadillac's driver, Gerald Colton, and placed him under arrest.

After Colton's arrest, Officer Duffy and Sergeant Busby returned to the bridge to continue their search for the other object. The officers eventually found an unloaded .45 caliber handgun on the side of the bridge in several inches of snow.

The case for the defendant followed two tracks. First, his counsel engaged in vigorous cross-examination of the Commonwealth's witnesses in an effort to show that they had not been truthful. In this endeavor, the defense exposed a number of inconsistencies in the testimony of the prosecution's principal witnesses, Officer Duffy and Sergeant Busby. These inconsistencies need not be detailed here. It is sufficient to observe that the cross-examination of Duffy and Busby provided a basis for the jury to find that the testimony of both officers could not be relied on to support the defendant's conviction.[3] As a second strategy, the defense counsel sought to

---

[3]Besides developing inconsistencies in the police officers' testimony, defense counsel also brought out that the police had failed to obtain fingerprints from the handguns, had failed to administer a paraffin test to the defendant to see if he had recently fired a handgun, and, despite a search, had not found a shell casing or bullet in the pickup truck or anything else to show that a handgun had been discharged from the pickup truck. There

suggest through cross-examination of Colton (who had been called as a witness by the codefendant Murnane) that the handguns had been disposed of by Colton and any passenger that might have been in the Cadillac.[4]

The case, therefore, came to closing arguments with the issue of the credibility of the police officers as a principal focus. Counsel for the defendant used his closing argument to attack, in a proper way, Duffy's credibility and that of the other witnesses for the Commonwealth, and to maintain that the handguns belonged to Colton and a passenger in his vehicle. Thus, counsel for the defendant concluded that the only just verdict was one of acquittal of his client because "the Commonwealth has failed to prove to you beyond a reasonable doubt, to a moral certainty, that [the defendant], rather than . . . Colton and his passenger . . . had the guns."

In arguing in support of the police officers' credibility, the prosecutor maintained that Duffy and Busby had been truthful. To counter the argument of the defense, the prosecutor went on to state that the defendant and his codefendant were suggesting a "conspiracy" whereby the officers "put their pensions . . . on the line to get these two guys. . . . [Officer Duffy] hashed up a conspiracy, put his pension on the line to get these two guys." Later in his closing, the prosecutor said, "[I]f [Duffy's] that kind of cop, after seventeen years, there'd be some kind of record of it, and you'd hear about it, and you didn't."

After the prosecutor's closing, the defense counsel made an adequate objection to the portions of the prosecutor's argument quoted above and asked that a mistrial be declared, or,

---

was further evidence from which the jury could have found that the .25 caliber handgun had a full clip in it and that the .45 caliber handgun had no clip.

[4]Colton indicated on cross-examination by defense counsel that he "recognize[d]" the .45 caliber handgun which was claimed to have been carried by Murnane, but denied that particular weapon was his (Colton's). Colton also testified on cross-examination that on December 29, 1990, he possessed a license to carry a firearm. The evidence was unclear whether there was a passenger in the Cadillac, but might have permitted that inference.

at the very least, that the judge give particularized curative instructions.[5] The request for a mistrial was denied. The request for focused curative instructions was also not honored, the judge electing instead to give the jury only the usual generalized instructions that they were to base their verdicts on the evidence and that what counsel had said in their opening and closing statements was not evidence.[6]

1. We conclude, as did the Appeals Court, that the challenged portions of the prosecutor's argument were improper. A prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence. See *Commonwealth* v. *Hoppin*, 387 Mass. 25, 30 (1982). In a case like the one before us, the prosecutor should not indicate that the absence of evidence from the defendant makes his case unbelievable. The prosecutor's comment about a pension or pensions violated the first principle. There was no evidence that the pensions of Officer Duffy and Sergeant Busby would have been placed in jeopardy if it became apparent to the jury that they had given false or incorrect testimony at trial. The comment about the absence of

---

[5]On the curative instruction remedy, defense counsel asked the judge to instruct the jury in accordance with the following:

> "I'd like you to give an instruction that [the jury] don't know whether or not Officer Duffy has ever been disciplined before, and that [the jury] can't consider that. That, furthermore, you don't know the status of his pension and [the jury] can't consider any of that. And that, furthermore, it's [the jury's] memory that controls as to what were the facts. But certainly as to the bolstering of Duffy's credibility, that came about through [the prosecutor's] argument, is improper."

[6]Defense counsel did not renew his request for curative instructions following the charge even though the judge stated that he would consider saying something about the "pension" argument and invited defense counsel to come back after the charge if a further specific instruction was needed. We deem the defendant's rights saved in the circumstances of this case. "Objection at the conclusion of the prosecutor's argument normally preserves the defendant's rights. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 574 (1985). If the defendant properly objected to closing argument, he is entitled to appellate review 'as of right.' See *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 884 (1984)." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987).

"some kind of record" from prior cases indicating that Officer Duffy might tend to prevaricate or testify disingenuously violated the second principle. The statement improperly suggested that the defense had an obligation to produce evidence, and that the failure to prove a record of disciplinary infractions on the part of Duffy justified an inference that no such record existed.

2. "The consequences of prosecutorial error depend on a number of factors, such as: Did the defendant seasonably object to the argument? Was the prosecutor's error limited to 'collateral issues' or did it go to the heart of the case (*Commonwealth* v. *Shelley*, 374 Mass. 466, 470-471 [1978])? What did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions? See *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 579-580 (1986); *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 884-885 (1984)." (Footnote omitted.) *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987). Application of these factors persuades us that a new trial is necessary.

There was proper and timely objection by defense counsel to the prosecutor's comments, and the improper argument went to police credibility, the crux of the case. The judge was asked to give particularized instructions to neutralize the errors in the prosecutor's argument and eventually declined, choosing to rest on standard instructions that did not touch on the specific improper arguments that had been made by the prosecutor.

Could the error have influenced the jury to convict the defendant? We think so. The Commonwealth's evidence in the case was not overwhelming. As the judge stated, after reflecting on the trial during the sentencing proceeding, "the case I suppose could be characterized as a close one on the facts." Defense counsel sought in his trial strategy to induce a reasonable doubt as to the defendant's guilt in the jurors' minds. The prosecutor countered that his case was stronger because it was witnessed by police officers rather than ordinary citi-

zens, and he went on to bolster that contention impermissibly by arguing that the police officers would not lie because their pensions would be on the line, and that there was nothing to show that Officer Duffy had any blemishes on his seventeen-year record. Any juror could have thought that a not guilty verdict could create problems for the future of officers who, from all that appeared, had maintained satisfactory careers. Any juror might also have thought that the absence of proof that Officer Duffy had been untruthful, or less than candid, in his testimony at prior trials, undermined the defendant's contention that Duffy's testimony should not be credited in all its material aspects. Where it cannot be said with assurance that the improper closing argument could not have influenced the jury to convict, the judgment of conviction cannot be preserved.

The judgment is reversed, the verdict set aside, and the case is to stand for a new trial.

*So ordered.*