## COMMONWEALTH *vs.* LUCINIO ESTEVES.[1]

No. 97-P-0487.

Bristol. November 19, 1998. - February 17, 1999.

Present: WARNER, C.J., BROWN, & LENK, JJ.

Further appellate review granted, 429 Mass. 1104 (1999).

*Rape. Evidence,* Hearsay, Relevancy and materiality, Privileged communication. *Practice, Criminal,* Argument by prosecutor, Interpreter. *Interpreter.*

At the trial of an indictment for rape of a child by force, a statement of the victim's boyfriend denying having sexual relations with her was inadmissible hearsay, but the admission of the statement in evidence was not prejudicial to the defendant, where the impact of the statement was minor and did not weaken the defendant's case in any significant way. [341-342] BROWN, J., dissenting.

At the trial of a rape indictment, the prosecutor, in closing argument, improperly analogized the jurors' supposed fear when called to sit in the case to the fear of the victim while she testified; however, the remarks did not create a substantial risk of a miscarriage of justice where, in context, they did not constitute an appeal to the jurors' sympathy but rather attempted to explain the inconsistency between the victim's trial testimony and her grand jury testimony some years earlier. [342-344] BROWN, J., dissenting.

After the conclusion of a rape trial and before the record for appeal had been assembled or the case had reached a final disposition, the Commonwealth should not have made, and the judge should not have allowed, a motion to destroy impounded *Bishop* materials (*Commonwealth* v. *Bishop,* 416 Mass. 169 [1993]) that the judge had ordered to be held by the clerk's office "for purposes of appeal"; however, the defendant was not prejudiced, where no treatment records were in issue at trial, and where the defendant had no right to view the impounded records either at trial or for purposes of appellate review of his conviction. [344]

At the trial of a criminal case, there was no error in the judge's allowing the defendant's interpreter to translate into English the testimony of other witnesses as well. [344-345]

The cumulative effect of errors at a criminal trial did not amount to reversible error. [345] BROWN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on October 26, 1994.

---

[1]As is our custom, the name of the defendant is as it appears on the indictment; elsewhere in the record the defendant's first name is spelled Licinio.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

*Daniel Beck* for the defendant.

*Shaun S. McLean,* Special Assistant District Attorney, for the Commonwealth.

WARNER, C.J. A Superior Court jury found the defendant guilty of rape of a child by force. On appeal, the defendant claims (1) the judge improperly admitted an inadmissible hearsay statement, (2) the prosecutor engaged in an improper closing argument, (3) *Bishop*[2] records were improperly destroyed, and (4) a foreign language interpreter was used improperly.

The jury could have found the following facts beyond a reasonable doubt. In November of 1990, the defendant, Lucinio Esteves, the victim's uncle, arrived from Portugal and moved into the victim's home. At the time, the victim was eleven years old and lived with her parents, her sisters, and her brother.

Shortly thereafter, the defendant digitally raped the victim. This type of abuse occurred on a continual basis for the next few months until the defendant then had sexual intercourse with the victim when she was alone with him on the third floor of the house. Over the next several years, the defendant had sexual intercourse with the victim daily, except for short periods of time when he would leave to work on a fishing boat.

The sexual abuse stopped sometime at the end of 1993 when the victim, who was fourteen years old by that point, threatened to disclose the assaults to her mother if the defendant touched her again. The victim did not report the abuse to her parents at this time, but she had told her best friend about it when she was thirteen years old. The defendant subsequently moved out of the victim's home in December of 1993.

In April of 1994, while her parents were away, the victim had a party at her home, and several of her friends, including her boyfriend, spent the night. The victim's mother became enraged when she found out about this and told the victim that she was going to take her to a doctor to have her examined to determine whether she was a virgin. The victim denied having sexual relations with her boyfriend.

After this confrontation with her mother, the victim and her sister visited their aunt. The victim then disclosed the defendant's sexual abuse to her sister and her aunt. The defendant denies the victim's allegations.

[2]See *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993).

1. *Hearsay.* At trial, the victim's mother testified, over objection, that when she confronted the victim's boyfriend about spending the night at her home he denied ever touching the victim. The judge allowed the statement because it may have explained "any actions that people took as a result of obtaining the information." The defendant argues that this testimony "was only relevant if it was true" and that it was therefore inadmissible hearsay not falling into any one of the exceptions.

The defendant next asserts that the admission of this statement was highly prejudicial to his case considering it was basically a credibility contest where the evidence was not overwhelming as a matter of law. See *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 587 (1994). According to the defendant, the statement undermined his defense that the victim fabricated this accusation only to prevent her mother from discovering that she was sexually active with her boyfriend. The defendant argues that, if the jury believed that the victim and her boyfriend did not have sexual relations, the victim's motive to lie would be negated. Additionally, the defendant argues that the statement bolstered the victim's credibility because the victim had also denied that she had sexual relations with her boyfriend.

The Commonwealth conceded at oral argument that the statement was inadmissible hearsay. Because the court allowed this inadmissible hearsay statement over the defendant's objection, the question becomes whether the error was prejudicial.[3] See *Commonwealth* v. *Reed*, 397 Mass. 440, 442 (1986); *Commonwealth* v. *Cyr*, 425 Mass. 89, 93-94 (1997). This standard requires consideration of whether this error may have weakened the defendant's case "in some significant way so as to require a retrial." *Commonwealth* v. *Cyr*, *supra* at 95. See *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983).

This statement did not significantly weaken the defendant's case for several reasons. First, although the statement may have bolstered the victim's credibility, any bolstering effect was minimal, as it merely corroborated her claim that she did not have sexual relations with her boyfriend. See *Commonwealth* v.

[3]Contrary to the defendant's assertion, merely because the boyfriend did not testify (and was not available for cross-examination), the harmless error beyond a reasonable doubt standard is not applicable here; there was no "constitutional error." See *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). Contrast *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991) (Miranda violation); *Commonwealth* v. *Urena*, 42 Mass. App. Ct. 20, 23-24 (1997).

*Halsey,* 41 Mass. App. Ct. 200, 203-204 (1996). The jury could have concluded that the victim had sexual relations with her boyfriend but was also raped by the defendant, and, even if they had heard nothing on the matter, the jury would still have inferred that the boyfriend denied having sexual relations. This was, then, a collateral issue. Contrast *Commonwealth* v. *Shelley,* 374 Mass. 466, 470-471 (1978). Moreover, there was only one inadmissible hearsay statement that may have bolstered the victim's credibility. Contrast *Commonwealth* v. *Almeida,* 42 Mass. App. Ct. 607, 615 (1997) (jury heard inadmissible testimony corroborating the victim's story on four separate occasions).[4]

Second, the defendant's contention ignores that the victim had already made a fresh complaint prior to her argument with her mother. Thus, the defendant's claim that the victim fabricated the allegations to conceal her sexual activity had already been weakened. Third, this statement did not in any way affirm the victim's allegations of sexual assaults by the defendant. Contrast *Commonwealth* v. *Davids,* 33 Mass. App. Ct. 421, 424 (1992) (fresh complaint testimony bolstered the victim's credibility by reinforcing his account of the incident and confirming his testimony that he had made previous complaints).

Finally, the theory regarding the victim's motive to lie was not the defendant's sole defense advanced during closing argument; he relied on a number of other defense theories that were unaffected by the boyfriend's statement. For example, the defendant argued that his employment records and the layout of the victim's home contradicted the victim's allegations. The defendant also attacked the victim's credibility and pointed to the fact that no one in the victim's home could corroborate her story. The impact of the boyfriend's statement was minor in the context of the defendant's argument as a whole. See *Commonwealth* v. *Diaz,* 426 Mass. 548, 551-552 (1998). Accordingly, the admission of the hearsay statement was not prejudicial.

2. *Closing argument.* During closing argument, the prosecutor stated, "Think of yourselves when you were called, your number, Panel 2, Seat 12, and you had to stand up. Think of the fear you felt. 'Oh, God, everybody's looking at me. I hope I

---

[4]The defendant also claims that the prosecutor exacerbated this error by twice stating that the victim and her boyfriend never had sexual intercourse, but the prosecutor's comments were based on the victim's testimony.

don't say anything I don't mean to say. I hope I don't sound stupid when I talk to [the judge] at the side bar.' Think of that, and then multiply it times a hundred when [the victim's] up on the stand for hours being cross-examined about what she said at a preliminary hearing back in June of 1994."

The defendant argues that these statements were improper because they invited the jury to put themselves in the victim's place, thus creating the risk that the case was decided on the basis of sympathy for the victim. The defendant asserts that the judge failed to mitigate this error by not giving either standard or curative instructions that closing arguments are not evidence.

The prosecutor improperly analogized the jury's fear of being before the judge to that of the victim, and she asked the jury to put themselves in the victim's place as the victim testified on the witness stand. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987) (a prosecutor should not play on the jury's sympathy or emotions); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 755 (1986) (same).

Because defense counsel failed to object, we must determine whether the prosecutor's remarks created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Ashley*, 427 Mass. 620, 627 (1998). The comments must be viewed in light of the entire argument, the judge's instructions, and the evidence at trial. *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993), quoting from *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990).

Here, the prosecutor's remarks did not create a substantial risk of a miscarriage of justice. The remarks, taken in the context of the entire argument, were an attempt to explain the inconsistency between the victim's trial and grand jury testimony. See *Commonwealth* v. *Valentin*, 420 Mass. 263, 274 (1995) (jury would have understood prosecutor's suggestion that they place themselves in the witnesses' shoes as a mere "rhetorical effort" to explain the witnesses' testimony). Although the comments touched upon the victim's credibility, a matter central to this case, the jury were not asked to decide the case based upon their sympathy for the victim's trauma. See *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 13-14 (1993) (no error where prosecutor did not suggest that jury had a duty to convict because of the victim's suffering, and jury's common sense would enable them to hear comments as "rhetorical flourish" regarding inconsistencies in witnesses' testimony). Contrast

*Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. at 755 (jury told to approach their deliberations "from the victim's point of view"). Further, the judge reminded the jury just prior to the closing arguments that closing arguments were not evidence. See *Commonwealth* v. *Valentin*, 420 Mass. at 274-275; *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. at 14.

3. Bishop *records.* Before trial, the judge ordered the victim's irrelevant treatment records to be impounded and retained by the clerk's office pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), and the victim's "relevant" treatment records to be provided to counsel subject to a protective order. After trial, the Commonwealth's motion to destroy the *Bishop* records was granted. The defendant argues that the destruction of the records prohibits him from appealing the judge's determination of relevancy.

The Commonwealth should not have made, and the judge should not have allowed, a motion to destroy the records until the record for appeal was assembled and the case reached a final disposition. See Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979); Mass.R.A.P. 9(a), as amended, 417 Mass. 1601 (1994). The order specifically provided that the irrelevant records were to be held by the clerk's office "for the purposes of appeal."

However, the treatment records were not even a remote issue at trial. The relevant records were not utilized during trial, nor did the defendant object to the trial court's relevancy determination. Contrast *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 568 n.6 (1997), *S.C.*, 427 Mass. 427 (1998) (at trial defendant made a request to "revisit" the judge's ruling of irrelevance). Moreover, as the Commonwealth correctly points out, the defendant would not be allowed to view the impounded documents for an appeal because if "defense counsel had no right to see the particular documents at the trial level, he has no right to see them at the appellate level." *Commonwealth* v. *O'Brien*, 27 Mass. App. Ct. 184, 190 (1989). See *Commonwealth* v. *Howard*, 42 Mass. App. Ct. 322, 329 (1997) (a "second look" by the single justice at irrelevant privileged records "is not a remedy ordinarily available to an aggrieved party"); *Commonwealth* v. *DeMaria*, *ante* 114, 120-121 (1999). Thus, the defendant did not suffer from any prejudice as a result of the destruction of the records.

4. *Interpreter. Commonwealth* v. *Festa*, 369 Mass. 419, 429-

430 (1976), stands for the proposition that, when a witness testifies in a foreign language, the English translation is the only evidence, not the testimony in the original language. At trial in this case, the judge allowed the defendant's interpreter (who had been assigned to translate the English testimony into Portuguese) to translate (from Portuguese into English) the testimony of other witnesses as well. Having lodged no objection below, the defendant now claims that this procedure effectively prevented him from hearing the actual evidence (the English translation) against him.

Appointment of an interpreter lies within the sound discretion of the trial judge and will not be disturbed on appeal unless there was an abuse of that discretion. Smith, Criminal Practice and Procedure § 2437, at 502 (2d ed. 1983). See *Commonwealth* v. *Turell*, 6 Mass. App. Ct. 937, 938 (1978). If two or more parties require an interpreter in the same language, the better practice is to have one interpreter and to pace the examination of the witnesses to allow time for the translation, thereby preventing parties from receiving differing versions of the testimony. Smith, Criminal Practice and Procedure § 2438, at 503. This procedure was followed in this case; the appointment of the defendant's interpreter was not an abuse of discretion.

Further, the defendant's reliance on *Festa* is misplaced. In that case, the court addressed the concern that, when the jurors speak the same language as the witness, the jurors may hear extraneous testimony not in evidence. *Commonwealth* v. *Festa*, 369 Mass. at 427. Thus, the court concluded, under those circumstances, the *jury* should be instructed that "it is the interpreted testimony in English that is evidence and not their own translations." *Id.* at 430.

That concern is not applicable here because it was the defendant, not the jury, who would have understood all the testimony of the witnesses as he was fluent in Portuguese, the language spoken by the witnesses. There is no claim here that any members of the jury understood Portuguese. Additionally, the defendant sufficiently heard all of the testimony at trial; he could have either heard the direct testimony of the witnesses in Portuguese, or listened to the interpreter's translation in English. There was no error.

Neither separately nor in combination did the errors at the defendant's trial amount to reversible error.

*Judgment affirmed.*

BROWN, J. (dissenting). Apart from the unheeded stern admonitions in *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 & n.10 (1991), and numerous other cases, and the not too subtle suggestion in *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 501-503 & n.4 (1994) (Brown, J., dissenting), I would reverse the defendant's conviction because, for several reasons, I do not think his trial was fair.

First, I believe the objected-to inadmissible hearsay was materially prejudicial.[1] The statement cut the heart out of the defendant's claim that the victim fabricated the allegations against him in order to conceal her sexual activity (vigorously opposed and condemned by her mother) with her boyfriend. "On balance there was enough potential force to the [boyfriend's out-of-court denial of sex with the victim] so that we cannot shrug off the error attending its admission as harmless. There is danger in speculation long after the fact about what impact inadmissible evidence may have had on a jury's reasoning." *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 798 (1985). In short, in a case, such as this, where the evidence against the defendant was not overwhelming and where the mother's statement served to bolster the victim's credibility in the minds of the jurors, I am of opinion that admission of the hearsay testimony was not harmless beyond a reasonable doubt.

Second, the prosecutor's closing argument far exceeded the well-known bounds and oft repeated clear judicial guidelines for proper closing argument. See, e.g., *Commonwealth* v. *Loguidice*, 36 Mass. App. Ct. 940, 940 (1994), and cases collected, *S.C.*, 420 Mass. 453 (1995). I would emphasize, quoting the majority opinion, that "the comments [of the prosecutor in closing] touched upon the victim's credibility, a matter *central* to this case" (emphasis supplied). *Ante* at 343. See and compare *Commonwealth* v. *Loguidice*, 420 Mass. at 457.

Third, I do not consider the judge's bland, formalistic comment that "closing arguments were not evidence" in any manner sufficient to purge the taint. It cannot be gainsaid that particularized and focused curative instructions are called for to neutralize errors. See *Commonwealth* v. *Kelly*, 417 Mass. 266, 271 (1994). Contrast *Commonwealth* v. *Loguidice*, 420 Mass. at 456 ("errors probably could have been cured by carefully focused instructions"). Furthermore, the judge's comment was

---

[1] As the majority notes, the Commonwealth conceded that the statement in question was inadmissible hearsay.

made *prior* to closing; obviously it could not have addressed the prosecutor's subsequent flagrant transgressions with the requisite specificity. In short, "[w]here it cannot be said with assurance that the improper closing argument could not have influenced the jury to convict, the judgment of conviction cannot be preserved." *Commonwealth* v. *Kelly*, 417 Mass. at 272.

As to the *Bishop* records, it goes without extended discussion that a clerk's office should not destroy such records prior to a final disposition.

Likewise, as to the interpreter, it has long been settled that when an interpreter is involved in the proceedings, the jury is to be instructed that the interpreted testimony is evidence, not their own translations.

In my view, the collective effect of these significant missteps precluded the defendant from receiving a fair trial. Therefore, I dissent.