COMMONWEALTH *vs.* LUCINIO ESTEVES.

Bristol. May 3, 1999. - June 10, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Evidence,* Hearsay, Cumulative evidence, Credibility of witness, Privileged communication. *Privileged Communication. Rape.*

At the trial of an indictment alleging rape of a child by force, in which credibility was the central issue, the erroneous admission of certain hearsay evidence, which corroborated the complainant's testimony and undermined the defendant's claim that the complainant had a reason to fabricate her story, prejudiced the defendant and a new trial was required. [638-641]

At the conclusion of a criminal trial, the Commonwealth should not have made, and the judge should not have allowed, a motion to destroy the records, until the record for appeal was assembled and the case had reached a final disposition. [642]

INDICTMENT found and returned in the Superior Court Department on October 26, 1994.

The case was tried before *Gerald F. O'Neill, Jr., J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Daniel Beck* (*Mary Brutzman* with him) for the defendant.

*Elspeth B. Cypher,* Assistant District Attorney, for the Commonwealth.

MARSHALL, J. A grand jury indicted the defendant on a charge of rape of a child by force, in violation of G. L. c. 265, § 22A, in October, 1994. On September 14, 1995, he was convicted by a jury, and sentenced to a term of imprisonment. The Appeals Court affirmed his conviction. *Commonwealth* v. *Esteves,* 46 Mass. App. Ct. 339 (1999). We granted the defendant's application for further appellate review. Because the erroneous admission of certain hearsay testimony was prejudicial to the defendant, we reverse the defendant's conviction and remand the case to the Superior Court for a new trial.

1. *Background.* The Commonwealth presented the following evidence. When the complainant was eleven years old and the

defendant (her paternal uncle) was approximately eighteen years old, the defendant moved into the home of the complainant's family. She testified that, starting a few months later and continuing over the course of the next three years, the defendant sexually assaulted or raped her on an almost daily basis. The complainant's best friend testified that, when the complainant was approximately thirteen years old, the complainant told her of the assaults, but also told her that they had stopped.[1] While the defendant lived with her family, the complainant told no one else about the assaults that occurred.[2] According to the complainant, in approximately November, 1993, when she was fourteen years old, the attacks ceased when the complainant told the defendant that, if he touched her again, she would tell her mother.

The defendant moved out of the complainant's home at the end of December, 1993, two weeks before his wedding. Several months later, in April, 1994, the complainant disclosed the assaults to her sister, her maternal aunt, and the police in the following circumstances. The complainant invited a group of friends over while her parents were out of town, a violation of their rules. Her boy friend and two of his friends, the complainant's female cousin, and the complainant's best friend spent the night in the complainant's home. When the complainant's mother returned home and learned of these events, she was extremely angry and told the complainant that she was going to have a doctor examine her to determine whether she was still "a virgin." The complainant became very upset and denied having had sexual intercourse with her boy friend. The mother telephoned the boy friend and similarly confronted him. Over the defendant's objection, she testified that the boy friend told her to take the complainant to a doctor if she wished because, he said, he "didn't touch" the complainant. That same day, the complainant disclosed to her sister and her maternal aunt that the defendant had sexually assaulted her. After the aunt informed the mother of this, the mother took her daughter to a hospital. The complainant then reported the assaults to the police.

In addition to the complainant and her best friend, who testified as a fresh complaint witness, the complainant's parents,

---

[1]This contradicted the complainant's trial testimony that the assaults continued until she was fourteen years old.

[2]There is some indication in the record that the complainant may have told her sister something about the assaults at some time.

aunt, and sister testified about the complainant's demeanor when she disclosed the sexual assaults and about the details of the family's living situation while the defendant lived with them. The complainant's medical records from her hospital visit following disclosure, which the judge described as "pretty bland," were admitted in evidence.

The defendant testified in his own defense and denied ever having sexually assaulted the complainant. His mother-in-law and wife testified that the defendant and the complainant had always had a close relationship. The defendant's strategy was to discredit the complainant, and to show that certain of the alleged events could not have occurred. Defense counsel argued to the jury that the layout of the home precluded the defendant from being alone with the complainant regularly; that the defendant's employment records established that he did not have access to the complainant at the times she alleged he assaulted her; that the evidence of the complainant's good relationship with the defendant and his wife belied any claim of earlier assaults; that the lack of corroboration from any family member, despite alleged daily sexual assaults and close living quarters, made the allegations suspect; and that the complainant's testimony at trial was inconsistent in material respects with her "prior" testimony, all casting doubt as to her credibility. He also suggested that the fury of the complainant's mother regarding her suspicion of her daughter's loss of virginity caused the complainant to fabricate her allegations.

2. *The boy friend's hearsay statement.* The defendant claims that the judge improperly admitted in evidence the mother's testimony of her conversation with her daughter's boy friend, over the defendant's objection and without any limiting instruction.[3] This evidence, he alleges, was prejudicial both because it bolstered the credibility of the complainant by corroborating her

---

[3] At trial, the complainant's mother testified that, after confronting her daughter about the boy friend's overnight visit and demanding to know whether she remained a virgin, the mother telephoned the boy friend to question him. The mother testified that she "called [him] and I asked him the same story. And I said to him, 'Don't deny it because I know you've been here.' And I said, 'Tomorrow I'm going to bring [the complainant] to a doctor, and I'm going to find out what happened between the two of you. If you did anything to her, you're going to pay because she's a minor.' "

The complainant's mother went on to testify: "[Her boy friend] said for me to go where I would like to, and if I wanted, he would go with me because he didn't touch [the complainant]." In ruling on the admissibility of this

testimony, and because it undermined the defendant's claim that the complainant had a reason to fabricate her story.[4] The Commonwealth concedes that the statement was inadmissible hearsay, but argues that the error did not prejudice the defendant.

"An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983)." *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 119 S. Ct. 523 (1998). We examine the hearsay statement in the context of the entire case against the defendant to determine whether its admission prejudiced the defendant "in some significant way so as to require a retrial." *Commonwealth* v. *Cyr*, 425 Mass. 89, 95 (1997).

The credibility of the complainant was central to the Commonwealth's case. The prosecutor began her closing statement by telling the jury that they had to choose between the credibility of the complainant and that of the defendant.[5] She then sought to cast doubt on every aspect of the defense. The Com-

___

testimony, the judge stated: "Not for the truth of the contents, because it is hearsay, but as it may explain any actions that people took as a result of obtaining the information." The Commonwealth concedes that the admission of the statement on these grounds was error.

[4] The defendant also claims that, because the boy friend did not testify, the admission of his statement to the mother violated the defendant's right to confront his accusers under both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Because we reverse his conviction, we need not reach this constitutional claim. See *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 663 (1997), quoting *Commonwealth* v. *Paasche*, 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached").

[5] The prosecutor began by arguing:

"There are two people in the entire world who know what happened between the defendant and eleven, twelve, thirteen year old [complainant]. Two people who know what really happened. All the other witnesses that came in and testified, they weren't there. They don't know. They didn't have a little Camcorder going through the walls to try to observe and see what happened. Two people in the entire world know

monwealth nevertheless argues that the inadmissible hearsay was not prejudicial because it was "merely cumulative" of other evidence. We recognize that in some cases the admission of inadmissible hearsay may not prejudice the defendant if it is cumulative of other properly admitted evidence. See *Commonwealth* v. *Squailia, ante* 101, 106-107 (1999); *Commonwealth* v. *Vinnie, supra* at 172, 173. Here, however, the inadmissible hearsay was "cumulative" of the complainant's own testimony: she testified that she had not had sexual intercourse with her boy friend. His forceful and explicit denial of sexual activity with her could only have bolstered her credibility with the jury. In these circumstances, "[w]e cannot fairly say that, in considering the [credibility of the complainant], the jurors primarily relied on properly admitted evidence to make their decision." *Commonwealth* v. *Cyr, supra* at 95.

The erroneous admission of this hearsay testimony is problematic for another reason. The boy friend's denial of having engaged in sexual activity with the complainant, if accepted by the jury, directly negated any incentive the complainant might have had to accuse the defendant falsely. As explained by the dissenting Justice in the Appeals Court, "The statement cut the heart out of the defendant's claim that the complainant fabricated the allegations against him in order to conceal her sexual activity (vigorously opposed and condemned by her mother) with her boy friend." *Commonwealth* v. *Esteves, supra* at 346 (Brown, J., dissenting). In her closing, the prosecutor explicitly attacked the defendant's theory of fabrication at some length, inviting the jury to find that the complainant had never had sexual intercourse with her boy friend and therefore had no

---

whether that man raped and molested the eleven year old [complainant], twelve year old, thirteen year old [complainant]. That's [the complainant] and the defendant. And their testimony in this case has been diametrically opposed to one another.

"So your job is going to be difficult, to decide who's telling the truth and who's lying, because somebody's got to be lying. It's not an easy task. I don't suggest to you it is; that it is an easy task. But I'd like to take a couple of minutes to discuss with you or talk with you about certain points that I'd wish you'd take into consideration when you're determining who's telling the truth and who's telling you a lie; and I'd ask you when you're evaluating these things to determine that [the complainant] is telling you the truth and the defendant has lied to you."

reason to lie.[6] Evidence of the boy friend's own denial thus "weakened the defendant's case in some significant way so as to require a retrial." *Commonwealth* v. *Cyr, supra* at 95, citing *Commonwealth* v. *Daggett,* 416 Mass. 347, 352 n.5 (1993); *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983).

We do not know and will not guess whether the jury accepted the boy friend's denial as true. The recognition that the improperly admitted hearsay could have had a significant impact on the jury's evaluation of the two central issues of the case — the credibility of the complainant and the possibility she had reason to fabricate the allegations — is sufficient for us to conclude that the error was prejudicial and the defendant is entitled to a new trial.

3. *Other claims.* The defendant asserts that he was prejudiced at trial by his inability to understand the interpreted testimony of two Commonwealth witnesses, and by the prosecutor's improper closing arguments. Because these issues are unlikely to arise at retrial, we do not reach them, except to note that particularly where credibility is central to the Commonwealth's

---

[6]The prosecutor argued:

"Now let's get to [the complainant] and the motive. Or what the defendant suggests is the motive for her to make up this story. And let's just examine whether or not there's any plausibility to that. . . .

"[A]ll the testimony that you heard is that a fourteen year old [complainant] whose parents are away is babysitting. She has some boys over; one of whom's her boy friend. Every testimony that you heard was that they all fell asleep watching TV, and they all woke up in the same room. So, *there's no possibility — there's no way that [the complainant] even had sex with [her boy friend]. So, if she never had sex with [her boy friend], then there's no reason for her to lie to begin with.* . . .

"So, the only information you have is that this young kid who's known her for somewhere between two weeks and two months came over for a pizza party and fell asleep over [*sic*] the house. Does [the complainant] strike you like the type of girl who's going to have wild sex with some guy that she's known for between two weeks and two months with her little brother and her little cousin and all the other kids from school in the same house? No. There's no testimony that she was caught in some sleazy motel somewhere and that's when she came up with this story. It's ridiculous. It's preposterous. *She never had sex with [her boy friend]. She's credible and believable given all the other testimony that you've heard.*" (Emphasis added.)

case, the prosecutor must refrain from vouching for the credibility of the complainant. See, e.g., note 6, *supra.*

The defendant also argues that the destruction of certain records prejudiced his ability to appeal from his conviction. The circumstances were these. Prior to trial, a judge in the Superior Court issued an order pursuant to *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), regarding confidential records of the complainant. The clerk's office maintained both sealed portions of the records (that the judge found to be irrelevant to this case), and portions made available to defense counsel (that the judge found to be relevant). Approximately two weeks after the trial and one week after the defendant filed his notice of appeal, the Commonwealth filed a motion requesting that the clerk return any original documents to the providing agency and destroy any copies of the confidential documents in his possession. In support of its motion, the Commonwealth stated that "there is no further need of the records as they were not introduced or utilized [at trial] in any way. . . . [T]he sensitive nature of the records requires them to be disposed of in a manner which will not violate [the complainant's] privacy." The docket indicates, and he does not suggest otherwise, that the defendant did not oppose the motion. The judge allowed the motion on February 29, 1996.

Although sensitive records concerning complainants of sexual assaults should be protected wherever possible, we agree with the Appeals Court that "[t]he Commonwealth should not have made, and the judge should not have allowed, a motion to destroy the records until the record for appeal was assembled and the case reached a final disposition. See Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979); Mass. R. A. P. 9 (a), as amended, 417 Mass. 1601 (1994)." *Commonwealth* v. *Esteves*, 46 Mass. App. Ct. 339, 344 (1999). The apparent insignificance of the records to the defendant's appeal, as perceived by the Commonwealth, does not negate the requirement that they be maintained until final disposition. The defendant, for example, had a right to seek review of the judge's determinations of the relevance of the documents withheld from him. It is unclear from the record whether any original documents were destroyed, or whether any of the materials, if required, may be reassembled. We leave to the discretion of the judge on remand the resolution of any issues that might arise if any required record has been destroyed permanently.

The judgment is reversed, the verdict set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*