## Commonwealth *vs.* Richard T. Saunders.

No. 08-P-332.

Plymouth. March 12, 2009. - October 20, 2009.

Present: Cohen, Brown, & Wolohojian, JJ.

*Rape. Assault and Battery. Evidence,* First complaint. *Practice, Criminal,* Mistrial, Discovery, Striking of testimony, Argument by prosecutor, Assistance of counsel.

At the trial of indictments charging, inter alia, rape of a child under the age of sixteen years, the judge did not impermissibly allow multiple complaint testimony when she permitted the victim's father and a police officer (neither of whom was the Commonwealth's designated "first complaint" witness) to testify that the victim had stated that the defendant was the father of a child the victim conceived when she was fourteen years old, where such testimony was a fair response to the defendant's earlier cross-examination of the victim regarding statements that she had made indicating that someone else was the person responsible for that pregnancy; likewise, the judge did not err in permitting the officer to testify regarding the victim's descriptions of places where she and the defendant had engaged in sexual relations while she was under the age of consent, where such testimony similarly rebutted inferences of recent fabrication raised by the defendant during his cross-examination of the victim. [509-510]

At a criminal trial, the judge did not abuse her discretion when she addressed the Commonwealth's inadvertent failure to provide discovery of a portion of a police detective's report by striking the detective's testimony rather than ordering a mistrial. [510-511]

Although two remarks made by the prosecutor at a criminal trial went beyond the scope of proper argument, the offending portions of the argument were not prejudicial, given the limited focus of the defendant's objection at trial; the judge's cautionary instruction, such as it was; the strength of the evidence against the defendant; and the fact that the jury did not convict the defendant of all charges. [511-512]

This court declined to reach, on direct appeal, a claim of ineffectiveness of counsel, the factual basis of which did not appear indisputably on the trial record. [512]

Indictments found and returned in the Superior Court Department on September 10, 2004.

The cases were tried before *Elizabeth B. Donovan*, J.

*Dana Alan Curhan* (*Brad P. Bennion* with him) for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

COHEN, J. After a jury trial in Superior Court, the defendant was convicted of rape of a child under the age of sixteen years, pursuant to G. L. c. 265, § 23, as amended by St. 1974, c. 474, § 3, and assault and battery as a lesser included offense of assault and battery by means of a dangerous weapon, pursuant to G. L. c. 265, §§ 13A and 15A.[1] On appeal, the defendant argues that (1) evidence of the victim's out-of-court complaints was admitted in violation of the "first complaint" rule, (2) the trial judge erred in failing to grant the defendant's request for a mistrial, (3) the prosecutor's closing argument was improper, and (4) his trial counsel rendered ineffective assistance. Because the allegedly erroneous testimony falls within a defined exception to the first complaint rule and because the remaining grounds asserted do not constitute reversible error, we affirm.

*Background.* Based on the evidence presented at trial, the jury could have found the following facts. In 1999, the defendant, then thirty-six years old, began a relationship with the victim, who was fourteen. Almost immediately, they began to engage in sexual activity including, after a period of less than one year, sexual intercourse. They met frequently at the home of the defendant's mother and at various hotels. Soon thereafter, while the victim was still fourteen years old, she became pregnant with the defendant's child. At the defendant's urging, and in order to avoid implicating him in criminal activity, the victim obtained an abortion. The defendant also instructed her to tell others that another man was responsible for the pregnancy.

After the abortion, the relationship became abusive. Nevertheless, the victim continued to be involved with the defendant, eventually moving into an apartment that he shared with his ex-girlfriend and their two children. On one occasion, in December, 2001, when the victim and the defendant were passengers in a friend's car, the defendant accused the victim of sleeping with

---

[1] The defendant was acquitted on a charge of drugging a person for the purpose of engaging in sexual intercourse, pursuant to G. L. c. 272, § 3.

another man, grabbed her by her head, and pushed her face into the car window.

At some point after the victim's sixteenth birthday she became pregnant again. She was seventeen when she gave birth to the defendant's daughter. Thereafter, the couple's relationship deteriorated. In November, 2003, when their daughter was approximately seven months old, the victim moved out of the apartment. The defendant was indicted in September, 2004.

Prior to trial, and without objection from the defendant, the judge allowed the Commonwealth's motion in limine to present the designated "first complaint" testimony of the best friend of the victim at the time she became involved with the defendant. See *Commonwealth* v. *King*, 445 Mass. 217, 237-249 (2005), cert. denied, 546 U.S. 1216 (2006). It was anticipated that this witness would state that the victim had told her that the defendant was the father of the child that the victim conceived at age fourteen.

At trial, the defendant's position was that he did not engage in sexual relations with the complainant until after her sixteenth birthday and that she had fabricated her allegation of underage sexual activity because of animus that developed when their relationship ended. In support of this defense, the defendant endeavored to show, from the inception of the trial, that he was not the man responsible for the victim's first pregnancy.

During his cross-examination of the victim, who was the first witness called by the Commonwealth, defense counsel extensively questioned her about statements that she had made to others when she became pregnant — eliciting testimony that, at the time, she initially identified the father as someone other than the defendant. He also extensively questioned the victim about the places where she claimed to have had sexual relations with the defendant while she was underage.

The second witness was the victim's father, John R., who testified on direct examination, and without objection from the defendant, that when he learned of his daughter's underage pregnancy and asked her who the father was, the victim was evasive but eventually identified the defendant. Thereafter, on cross-examination, the defendant extracted an admission from John R. that he had once informed a detective that his daughter had told him that the father was "a boy down on the Cape."

Deborah Batista, a police officer who interviewed the victim in January, 2004, was the third witness at trial. Over the defendant's objection, she was permitted to testify that the victim told her that the defendant was the father of the aborted fetus. She also was permitted to testify, over the defendant's objection, about statements made by the victim concerning the locations of her underage assignations with the defendant.

The Commonwealth's final witness was the designated first complaint witness, the victim's best friend at the time. As it turned out, however, she testified that she was unable to recall any conversations that she had with the victim regarding her relationship with the defendant.[2,3]

During the defendant's case, he called Detective David Shanks for the purpose of establishing that the police had done little to verify the victim's allegations concerning visits that she and the defendant made to various hotels while she was underage. Shanks defended his efforts by adverting to a portion of a January, 2000, report, where he wrote about interviewing a hotel desk clerk who recognized the victim's photograph. Because this portion of the report had not been produced by the Commonwealth during discovery, the defendant immediately requested a mistrial on the ground that he would not have called the witness and elicited the adverse testimony had it been turned over to him. After voir dire, the trial judge refused to grant a mistrial; however, she ordered Shanks's testimony struck from the record and twice instructed the jury to disregard it.

The prosecutor gave a strongly worded closing argument, to which the defendant raised two objections. The judge responded by instructing the jury that the rhetoric used by counsel in final

---

[2]In anticipation of receiving comparable testimony from the victim's friend, the Commonwealth already had introduced testimony from the victim that, when she found out she was pregnant, she confided in her friend and told her that the defendant was the father. See *Commonwealth* v. *King, supra* at 245 & n.24 (victim may testify as to what she told the first complaint witness, but only if the first complaint witness testifies regarding the complaint). Although the predicate for admission ultimately was not established, the defendant did not move to strike the victim's testimony, and he has not argued the point on appeal.

[3]Other evidence admitted during the Commonwealth's case-in-chief included a videotape of the defendant imploring the victim to get back together with him after she ended the relationship.

arguments was just that, and that it was up to the jury to determine the facts, assess the credibility of the witnesses, and render a verdict. She also gave a standard instruction that the jury should not be swayed by sympathy or emotion.

*Discussion.* 1. *Complaint evidence.* The defendant contends that, in violation of the first complaint rule, multiple witnesses testified to out-of-court statements by the victim, corroborating her allegation that the defendant had engaged in sexual relations with her before she turned sixteen. The defendant points specifically to the testimony of John R. that the victim told him the defendant was the father of the child conceived when she was fourteen years old; to the testimony of Officer Batista to the same effect; and to Batista's additional testimony recounting what the victim told her concerning places where she and the defendant had engaged in sexual relations while she was still under the age of consent. In each instance, however, the testimony was properly received not as first complaint, but as a fair response to the defendant's cross-examination of the victim and his over-all defense strategy. See *Commonwealth* v. *Kebreau*, 454 Mass. 287, 297-299 (2009). See also *Commonwealth* v. *Parreira*, 72 Mass. App. Ct. 308, 318 (2008); *Commonwealth* v. *Dargon*, 74 Mass. App. Ct. 330, 337-338, *S.C.*, 457 Mass. 387 (2010).[4]

The first complaint doctrine was adopted to ameliorate the

---

[4]The Commonwealth's brief, which was filed prior to the decisions on which we rely, offers another rationale for the contested evidence, i.e., that it was admissible as evidence of a prior out-of-court identification of the defendant. See *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 436-442 (2005); *Commonwealth* v. *Bol Choeurn*, 446 Mass. 510, 517 (2006). See also Mass. G. Evid. § 801(d)(1)(C) (2008-2009). Here, however, there was no contested issue of identification in the usual sense, since the victim and the defendant were intimately known to each other. The only question was whether the defendant had engaged in sexual relations with the victim before her sixteenth birthday — which turned on the relative credibility of the victim and the defendant, and not on the victim's ability to discern the defendant's identity. Were the hearsay exception for evidence of prior identification to be applied in these circumstances, the first complaint doctrine would be rendered all but meaningless. In all sexual assault cases (indeed in all criminal cases), determining that the defendant is the person guilty of the crimes charged is a necessary predicate for conviction. Thus, the logical consequence of the Commonwealth's approach would be that every extrajudicial accusation of the defendant by the victim could be offered not as complaint evidence but as a "prior identification." Furthermore, even where an independent evidentiary rubric for admission exists, that is not the end of the analysis. See *Commonwealth* v. *Monteiro, ante*

strong likelihood of unfair prejudice to the defendant from the admission of multiple complaints. See *Commonwealth* v. *King*, 445 Mass. at 243-245. However, the doctrine "is not intended to be used as a shield to bar the jury from obtaining a fair and accurate picture of the Commonwealth's case-in-chief." *Commonwealth* v. *Arana*, 453 Mass. 214, 228-229 (2009). Accordingly, the admission of multiple reports of a victim's allegations of rape is permissible where the evidence serves an independent purpose and is necessary to present a fair and accurate picture of the Commonwealth's case. *Commonwealth* v. *Monteiro, ante* 489, 495 (2009).

Here, by questioning the victim about statements that she had made indicating that the person responsible for her first pregnancy was someone else, the defendant "opened the door" to the testimony of John R. and Batista that the victim had told them that the defendant was the father. See *Commonwealth* v. *Dargon, supra* at 337 (given the defense's strategy, the Commonwealth was "permitted, within reason, to admit evidence of the victim's prior consistent statements"). Likewise, by cross-examining the victim extensively on the subject of her conversations with police officers, including Batista, about the locations of her liaisons with the defendant, the defendant "opened the door" to Batista's testimony recounting the victim's descriptions of these places. The evidence was received for the independent purpose of rebutting the inferences raised by the defendant's inquiries — inquiries designed to show recent fabrication on the part of the victim — and was necessary for a fair understanding of the Commonwealth's case. There was no error.

2. *Motion for mistrial.* The judge did not abuse her discretion when she addressed the Commonwealth's failure to provide discovery of a portion of Detective Shanks's report by striking the testimony rather than ordering a mistrial. See generally *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. 185, 190 (1997) (discussing relevant factors). There is no suggestion that the discovery lapse was anything but an inadvertent mistake,[5] the

___

489, 494-495 (2009). The evidence also must serve a separate function, and must be of sufficient importance to a fair understanding of the Commonwealth's case that its probative value outweighs the incremental prejudice to the defendant inherent in the receipt of multiple complaint evidence. *Ibid.* Here, where the defendant's identity was not an issue, this standard could not be met.

[5]Voir dire of Detective Shanks revealed that the prosecution was never

judge's instructions to disregard the evidence were emphatic,[6] and there was no further mention of Detective Shanks or the desk clerk in the evidence or in closing argument.

3. *Closing argument.* Two of the remarks made by the prosecutor went beyond the scope of proper argument. One comment, which was the subject of specific objection, was the characterization of the defendant as "[s]wooping down like a vulture" to take advantage of the young victim.[7] Another comment, to which no objection was made, was the suggestion that the jurors "[e]nter into the heart and mind of a fourteen year old child" when considering discrepancies between the victim's testimony and her answers to questions asked of her at the abortion clinic.[8]

A prosecutor should not use extreme epithets to characterize the defendant. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 515-516 (1999); *Commonwealth* v. *Mosley*, 6 Mass. App. Ct. 451, 452-453 (1974). Nor should the prosecutor argue that the jury should put themselves in the victim's place. See *Commonwealth* v. *Esteves*, 46 Mass. App. Ct. 339, 343-344, *S.C.*, 429 Mass. 636 (1999). Particularly where the defendant is charged with a sex offense, the potential for prejudice from improper

given his entire January, 2000, report; instead, some portions of it were incorporated into a January, 2004, final report, which was provided to both the prosecution and the defense.

[6]Upon making her ruling the judge stated: "I am telling you now that I am striking from this record all of the testimony of Officer Shanks. You are not to discuss it in any way. And if you took any notes from Officer Shanks, just erase those notes. And I will also reiterate this when I am instructing you when you go to deliberate the case. You are not to discuss Officer Shanks' testimony in any way or even to consider it." In the final charge she stated: "Anything I struck from the record is not evidence. And that would include the testimony of Officer Shanks. You are to disregard anything I struck from the record. You are not to discuss it at all during the course of your deliberations."

[7]The defendant also objected to a statement that even though the victim may have felt that she was in love and in a relationship, "the Legislature knows better." There was no need to place the Legislature's imprimatur on the prosecution of this case. In context, however, we think the jury would have understood the remark as simply reiterating the prosecutor's previous statement that consent was not an element of the crime of statutory rape.

[8]In context, an additional statement cited by the defendant to which he did not object, i.e., that the defendant was "a parent's worst nightmare and a teenage girl's worst reality," was comparable to argument that has been deemed "tolerable hyperbole, as a reasonable jury would recognize." See *Commonwealth* v. *Hartford*, 425 Mass. 378, 381 (1997).

argument is strong. *Commonwealth* v. *Vazquez*, 65 Mass. App. Ct. 305, 312 (2005). See *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 742 (1994), *S.C.*, 422 Mass. 1014 (1996).

Here, although the judge gave a general admonition about "the rhetoric used by counsel" and a standard instruction that the jury should not be swayed by sympathy or emotion, a stronger and more pointed reaction was warranted. See, e.g., *Commonwealth* v. *Kelly*, 417 Mass. 266, 271 (1994) (curative instructions should be focused on the error); *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 296-297 (1990) (to counteract a "poisonous effect," curative instructions must be directed against the improper comments). Nevertheless, after taking into account the limited focus of the defendant's objection at trial; the judge's cautionary instruction, such as it was; the strength of the evidence against the defendant; and the fact that the jury did not convict the defendant of all charges,[9] we conclude that the offending portions of the argument were not prejudicial.

4. *Ineffective assistance.* The defendant contends that his trial counsel was ineffective because he brought out a significant amount of damaging testimony during his cross-examination of the victim. The Commonwealth responds that counsel's approach appears to have been a reasonable strategy designed to impeach the victim by showing her ongoing hostility and bias. Because the factual basis of the defendant's claim does not appear indisputably upon the trial record, we decline to reach the issue. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006).

*Judgments affirmed.*

---

[9]The defendant was acquitted of a charge of drugging a person for sexual intercourse and convicted not of the charge of assault and battery by means of a dangerous weapon, but of the lesser included offense of assault and battery.