The defendant, Patrick Gadwah, was indicted on charges of rape of a child with force, G. L. c. 265, § 22A, rape and abuse of a child aggravated by age difference, G. L. c. 265, § 23A, and indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B. The defendant was found guilty by the jury of three counts of indecent assault and battery on a child under the age of fourteen.[2] On appeal, the defendant argues that the judge erred in denying his motion to suppress statements he made during an interview with police, on the ground that the statements were involuntary. The defendant also argues that the judge erred in allowing in evidence the testimony of the victim regarding a conversation she had with her mother about the incident. For the following reasons, we affirm.
Background. The jury could have found the following facts. In the fall of 2012, the victim, along with her young cousins, visited the home of the defendant to play with the defendant's children. While there, the group had snacks and played video games together. While the others were playing the video games, the defendant, who was sitting behind the victim, touched her genitals under a blanket. He then forced her to touch his penis. After she and her cousins left the defendant's home, the victim told one of her cousins what had occurred. In January, 2013, the victim told her mother about the incident, which eventually led to the police becoming involved.
Discussion. 1. Voluntariness of interview statements. The judge conducted an evidentiary hearing on the defendant's motion to suppress and heard testimony from a single witness, Detective Megan Pike of the Dracut police department. We accept the judge's findings of fact absent clear error, but review de novo her conclusion that the Commonwealth sustained its burden of proving that the defendant's statements were voluntary. Commonwealth v. Mitchell, 89 Mass. App. Ct. 13, 17 (2016).
On February 1, 2013, the defendant was interviewed by Detective Pike and Detective Lieutenant Mellonakos. The detectives conducted the interview at the request of the defendant.[3] The defendant was not in handcuffs, and at no point during the interview was he under arrest. The detectives did not say anything to the defendant that would have led him to believe otherwise. Detective Pike read the defendant his Miranda rights. The judge concluded, and the defendant does not dispute, that he understood and waived these rights. The defendant also requested that the interview not be recorded, and he freely and voluntarily signed a form acknowledging that he waived his right to have the interview recorded.
During the interview, the defendant appeared calm and collected until the detectives began to ask questions regarding his conduct during the day of the incident. The defendant then began to sweat profusely and claimed that he had diabetes. In response, the detectives offered him food and water which he refused, stating that he was "okay." The defendant did not ask to end the interview or ask for medical assistance. After the interview concluded, the defendant left the police station.
Statements are voluntary when they are "the product of a rational intellect and a free will, and not induced by" physical or "psychological coercion." Commonwealth v. Santana, 477 Mass. 610, 617 (2017) (quotation omitted). The defendant does not argue that the detectives employed any physical or psychological coercion during the interview. There was also no evidence to suggest any unfair tactics employed by the detectives to compel the defendant's statements. The defendant instead argues that his physical condition rendered his statements involuntary. The mere fact that a person has suffered a physical injury or has a medical condition that may impact his cognitive functioning does not lead ineluctably to the conclusion that statements he makes to the police are not voluntary. See Commonwealth v. Wills, 398 Mass. 768, 776 (1986) (statement made by defendant suffering from stab wound deemed voluntary). For example, in Commonwealth v. Clark, 432 Mass. 1, 12-13 (2000), the Supreme Judicial Court upheld the trial judge's ruling that statements made by the victim of a gunshot wound to police officers while the victim was treated at the scene by the emergency medical technician were voluntary. In contrast, a statement made by one who "by dint of physical or mental impediments is incapable of withholding the information conveyed" cannot be deemed voluntary. Commonwealth v. Paszko, 391 Mass. 164, 177 (1984).
During the interview, the defendant was calm, maintained eye contact with the detectives, and knew that he could leave at any time. The defendant's mood change occurred only when he was asked about the details of the day of the incident. The defendant's perspiration and statement that he has diabetes alone fail to demonstrate that he was "incapable of withholding the information conveyed." Ibid.
The judge also did not err in denying the defendant's motion to suppress based on the defendant's right to have a recorded interview. Here, the defendant himself requested that the interview not be recorded. See Commonwealth v. Pina, 430 Mass. 66, 69-70 & n.8 (1999).
2. Victim's testimony. During cross-examination, defense counsel presented the victim with questions regarding her knowledge of the type of attention and special treatment the victims portrayed in the television show Law & Order: Special Victims Unit received. This was then followed by counsel's questions regarding the timing between when the victim first told an adult about the incident and when she subsequently moved in with her mother, suggesting a motive for the victim to have made up the allegations. Defense counsel proposed the theory that the victim had purposefully fabricated the incident based on her knowledge and exposure to Law & Order on television. By lying about the incident, the victim would benefit from the attention in ways she had seen on the show, with the ultimate goal of moving out of her great-grandmother's home and in with her mother.
In order to address this theory, the Commonwealth on redirect examination asked the victim questions regarding the conversation she had with her mother about the incident. Defense counsel objected, arguing that the mother was a second complaint witness, in violation of Commonwealth v. King, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006).[4]
By introducing the manipulation theory, the defendant "opened the door" to the subsequent questions by the Commonwealth. Commonwealth v. Kebreau, 454 Mass. 287, 299 (2009). The Commonwealth had the right to rebut this theory by establishing that it was the mother who had asked the victim about the incident. By doing so, the Commonwealth was able to provide a "fair and accurate picture" of its case. Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009). Furthermore, the judge did not permit the victim to recount the details of the complaint itself. The Commonwealth's questioning of the victim on redirect served only to establish that the victim's mother actively sought the information, in order for the Commonwealth to rebut the defendant's theory that the victim manufactured the allegations so that she could live with her mother. Furthermore, the judge gave the jury a strong limiting instruction prior to the testimony that the upcoming evidence could be considered not for the truth but only for "determining the credibility of this witness on the stand." The jury are presumed to have followed this instruction. See Commonwealth v. Auclair, 444 Mass. 348, 360 (2005).
Judgments affirmed.

Count two was later dismissed as duplicative.

The defendant had telephoned four times and visited the police station in order to set up the interview with the detectives.

The defendant also claims that the trial judge ruled, in limine, that the victim would be precluded from providing such testimony at trial. However, the record makes clear that the trial judge declined to make a ruling on the motion until the relevant testimony was introduced during trial.