PAUL J. SANTOS, JR., individually and as executor,[1] & another[2]
*vs.* CHRYSLER CORPORATION & another.[3]

Suffolk. May 6, 1999. - August 25, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Similar incidents, Judicial discretion, Expert opinion, Relevancy
and materiality, Manufacturer's recall letter, Credibility of witness.
*Negligence,* Manufacturer of motor vehicle, Wrongful death, Design,
Comparative. *Motor Vehicle,* Defect. *Practice, Civil,* Argument by counsel,
Judgment. *Witness,* Credibility. *Wrongful Death. Indemnity. Interest.*

At the trial of an action brought against the manufacturer of a minivan for
negligence, breach of warranty of merchantability, and wrongful death,
there was no error in the judge admitting in evidence, with appropriate
instructions to the jury, testimony of six other minivan owners regarding
other substantially similar incidents involving their minivans to establish
notice to the defendant, to corroborate the alleged defect testified to by the
plaintiff's expert, and to refute evidence that the minivan was designed
without safety hazards. [202-205]

At the trial of an action brought against the manufacturer of a minivan, alleg-
ing negligence, breach of warranty of merchantability, and wrongful death,
the judge did not err or abuse her discretion in excluding the testimony of
a defense expert on the ground that the proffered evidence was speculative,
irrelevant, and misleading. [205-207]

At the trial of an action for negligence, breach of warranty of merchantability,
and wrongful death, brought against the manufacturer of a minivan, the
judge did not err in admitting evidence of the manufacturer's recalls of
minivans to show that the manufacturer was on notice of the defect the
plaintiff alleged to have caused his injuries. [207-208]

At the trial of an action for negligence, breach of warranty of merchantability,
and wrongful death, brought against the manufacturer of a minivan, the
judge did not err in admitting in evidence the plaintiff's experts' opinions
about defects in the brake design that could cause premature rear wheel
lockup under certain conditions, as that evidence was relevant to whether
the product was unreasonably dangerous. [208-210]

At the trial of an action for negligence, breach of warranty of merchantability,
and wrongful death, brought against the manufacturer of a minivan, the
judge did not err in admitting in evidence testimony by a braking engineer

[1]Of the estate of Robin O. Santos.

[2]Paul J. Santos, Jr., administrator of the estates of Christina E., Paul C., and
Peter R. Santos.

[3]Post Motors, Inc.

formerly employed by the defendant and a memorandum the engineer had written, where the evidence was relevant to the defendant's longstanding knowledge of potential dangers posed by the design of the brake system ultimately used in the minivan and the defendant's failure to address them. [210-211]

At the trial of an action for negligence, breach of warranty of merchantability, and wrongful death, there was no error in plaintiff's counsel's closing arguments that were supported by the evidence and fair inferences drawn therefrom [211-213]; any harm arising from plaintiff's counsel's suggestion that certain witnesses' testimony was truthful and counsel's reference to his life experiences, two instances of improper comment in the course of a lengthy trial and lengthy closing arguments, was cured by the judge's forceful instructions to the jury [213-214].

The plaintiff in an action alleging negligence, breach of warranty of merchantability, and wrongful death, who was also the sole beneficiary of the estates of the deceased and who was found by the jury to be ten per cent contributorily negligent, was not thereby precluded from recovery under the wrongful death act, where the wrongful death awards could have been supported by the jury's finding of breach of warranty; moreover, even if the jury's verdict was based on the negligence claim, the plaintiff's recovery would not have been barred. [214-215]

In a civil action, the judge did not abuse her discretion in ordering the entry of a separate and final judgment nunc pro tunc to the date of the denial of the defendant's posttrial motions for a new trial and for judgment notwithstanding the verdict, where the order avoided prejudice to the plaintiff in the calculation of postjudgment interest during the period in which the judge had only the defendant's indemnification disputes under consideration. [215-217]

In a civil action alleging breach of warranty of merchantability of a minivan, where the defendant seller was entitled to common-law indemnification from the defendant manufacturer, the judge correctly entered a judgment in favor of the seller on its claim for attorney's fees and costs incurred at trial, and the seller was entitled to appellate attorney's fees and costs as well [217-218]; and prejudgment interest on the seller's indemnification claim was to be calculated from the dates on which the legal expenses were paid [218].

CIVIL ACTION commenced in the Superior Court Department on February 13, 1992.

The case was tried before *Barbara J. Rouse,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Andrew J. McElaney, Jr.* (*Peter M. Durney* with him) for Chrysler Corporation.

*Cynthia J. Cohen* (*Leo V. Boyle & Samuel M. Furgang* with her) for the plaintiff.

*John J. Ryan, Jr. (Emily G. Coughlin* with him) for Post Motors, Inc.

ABRAMS, J. The wife and three children of the plaintiff, Paul J. Santos, Jr., were killed in an automobile accident. He sued the defendant Chrysler Corporation (Chrysler), the manufacturer of his 1986 Plymouth Voyager minivan, for negligence, breach of warranty of merchantability, and wrongful death. The plaintiff also sued Post Motors, Inc. (Post Motors), the retail seller, for negligence. Post Motors cross-claimed for indemnification from Chrysler. A jury returned special verdicts against Chrysler. The jury determined that Post Motors was not negligent. But see note 30, *infra*. The judge concluded that Post Motors was entitled to indemnity from Chrysler. Chrysler appeals, alleging error in the denial of its motions for a directed verdict, mistrial, judgment notwithstanding the verdict, and a new trial.

Chrysler challenges several of the judge's evidentiary rulings. It also argues that the judge erred by permitting improper closing argument, by failing to eliminate the plaintiff's wrongful death recoveries, and by entering the judgment retroactively. In addition, Chrysler appeals from the judgment for Post Motors on its cross claim for indemnity. We allowed Chrysler's application for direct appellate review. We affirm the judgments against Chrysler in favor of the plaintiff. We remand the judgment against Chrysler in favor of Post Motors for the calculation of interest in accordance with *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837 (1986).

1. *The trial.* In February, 1990, the plaintiff was driving his 1986 Plymouth Voyager minivan in New Hampshire. The plaintiff, his wife, and their three children were returning to Belmont from a ski trip in Canada. The plaintiff applied the brakes after approaching traffic which was slowed behind a snow plow. The rear of the minivan slid to the right and the vehicle swerved into the oncoming lane, where it was hit broadside by a Ford Bronco. The plaintiff's wife and three children died as a result of the accident. The plaintiff sustained personal injuries.

The plaintiff offered expert testimony to establish that the cause of the accident was premature rear wheel lockup. Rear wheel lockup occurs when a driver applies the brakes, the rear wheels lock before the front, causing the rear of the vehicle to

skid.[4] The plaintiff claimed that the rear wheel lockup was premature, meaning that it happened in circumstances in which an ordinary driver reasonably would not anticipate. The plaintiff alleged that premature rear wheel lockup was a design defect, which, in turn, was caused by one or more design defects that existed or could have occurred in the minivan's brake system.[5] Chrysler contended that the accident was caused by driver error in hazardous winter weather.

A jury found that Chrysler was negligent, grossly negligent, and had violated the implied warranty of merchantability. The jury determined that Post Motors was not negligent. The jury also found the plaintiff to be ten per cent negligent. The jury awarded $12.8 million in compensatory damages for the wrongful deaths of the wife and children, the conscious pain and suffering of the wife, the wife's lost future earnings, and the plaintiff's personal injuries. The jury also awarded $15,705 in punitive damages.[6]

In March, 1996, Chrysler filed motions for judgment notwithstanding the verdict, for a new trial, and to correct the judgment. The judge allowed in part the motion for judgment notwithstanding the verdict as to the award of lost future earnings of the wife. The other motions were denied. In June, 1997, the judge allowed the plaintiff's motion for entry of separate

---

[4]Lockup occurs when the braking force on a tire exceeds the limit of adhesion created by the friction between the tire and the road. See *United States* v. *General Motors Corp.*, 841 F.2d 400, 405 (D.C. Cir. 1988).

[5]There was expert testimony that the braking system had a propensity for premature rear wheel lockup caused by the following factors: the braking system had an insufficient margin of error and the break point was set improperly for surfaces with a low coefficient of friction; the braking system could not accommodate changes in efficiency of the braking system caused by changes in the linings, moisture, and temperature; the height sensing proportioning valve (HSPV) was exposed so that it could be dented or bent, and was located in an area where it was exposed to snow or stones; there was no shield to protect the HSPV from snow or stones; the sensing system was difficult to adjust and tolerance of the HSPV was such that a minor adjustment could cause a significant difference in brake pressure; the system was unable to maintain proper adjustment, and, although adjustments were needed, they were not required; changes in the suspension could affect the valve load reading, and the HSPV was located on one side, which could lead to a miscalculation of load; the location of the measuring movement was "questionable"; and brake modulation and the application rate of the brake pedal affected the stability of the system.

[6]The jury noted on the verdict form that the award reflected the price the plaintiff had paid for the minivan.

and final judgment, retroactively entering judgment to September, 1996. In January, 1998, the judge entered a separate judgment for Post Motors on the indemnity claim.

2. *Evidentiary rulings.* a. *Other incident evidence.* Chrysler argues that the judge erred by admitting, over its objection, the testimony of six Chrysler minivan owners regarding other incidents involving their own minivans as well as National Highway Transportation Safety Administration (NHTSA) vehicle owners' questionnaires (VOQs) submitted by the six owners. The evidence was admitted for three purposes: to establish notice; to corroborate the alleged defect; and to refute evidence that the minivan was designed without safety hazards.[7]

Evidence of incidents similar to the plaintiff's is viewed with disfavor because the other incidents "may have been the consequence of idiosyncratic circumstances." *Read* v. *Mt. Tom Ski Area, Inc.*, 37 Mass. App. Ct. 901, 902 (1994). However, such evidence is admissible if the judge first determines that the jury could find a substantial similarity in circumstances.[8] See *Kromhout* v. *Commonwealth*, 398 Mass. 687, 693 (1986). See also *Simmons* v. *Monarch Mach. Tool Co.*, 413 Mass. 205, 214 (1992); *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 365-366 (1980); *Robitaille* v. *Netoco Community Theatre of N. Attleboro, Inc.*, 305 Mass. 265, 268 (1940). The judge also must determine that there is minimal danger of unfairness, confusion, and undue expenditure of time in the trial of collateral issues. See *Kromhout, supra*; *Robitaille, supra*. The admission of other incident evidence rests within the judge's discretion. See *id.*

Chrysler points to several differences between the other incidents and the plaintiff's accident, arguing that the judge erred in concluding that the jury could find the incidents were sufficiently similar to the plaintiff's accident. Five of the six witnesses owned minivans of a different model year than the plaintiff's minivan. Four of the six minivans had a shielded height sensing proportioning valve (HSPV), while the plaintiff's

---

[7]It is undisputed that the plaintiff had to prove that Chrysler knew of the tendency of its minivan to experience premature rear wheel lockup. Although Chrysler presumably had access to the NHTSA VOQs filed by the six other incident witnesses, Chrysler did not concede notice of the defect. Indeed, Chrysler's theory was that the accident was caused by driver error in hazardous weather.

[8]Chrysler argues that the test is of substantial identity. The judge used the similarity standard. Chrysler has not set forth any meaningful differences between substantial identity and substantial similarity, and we see none.

was unshielded.[9] None of the other incidents occurred on snow or ice.

We conclude that, although they did not replicate the exact circumstances of the plaintiff's accident, the other incidents could be found by the jury to be substantially similar. Each of the witnesses described the rear ends of their minivans skidding or swerving following hard application of the brakes. Although not all the witnesses specifically stated that their wheels "locked up," the jury could infer the phenomenon from the words used by the witnesses.[10] There was evidence that the braking system was essentially the same in all the minivans, regardless of whether the HSPVs were shielded or not. In addition, the plaintiff offered numerous additional reasons for premature rear wheel lockup, see note 5, *supra*, aside from contamination of the unshielded HSPV. All the witnesses testified to incidents on wet roads. Although there was evidence that the plaintiff's accident occurred in snowy conditions, there was evidence that most of the snow had been cleared and the road was only wet. The differences between the other incidents and the plaintiff's accident could be considered by the jury in terms of weight of the evidence.[11] *Wheeler* v. *John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir. 1988).

---

[9]The HSPV figured prominently in the case. To achieve the proper balance between the efficacy of the front and rear brakes, Chrysler elected to design the braking system with the HSPV. The purpose of the HSPV was to vary the amount of pressure going to the rear brakes, depending on the loading conditions of the minivan. The plaintiff claimed that the HSPV was unreliable, in part because its placement on the vehicle exposed it to contamination from external debris. The 1984 and 1985 models of the minivan were recalled so a shield could be installed on the HSPV. Minivans manufactured after the plaintiff's also contained a shielded HSPV. One of the theories of the plaintiff's case was that snow contamination interfered with the performance of the HSPV.

[10]The witnesses offered the following descriptions: "skid[ded] and swerv[ed]"; "car did a 180 degree turn on flat road"; "it felt like my back brakes were locking up, and my rear end seemed to be starting to come over"; "The rear end locked, the rear brakes locked up, and the car started to come around"; "it skidded on me"; "[the rear] would skid"; "one of the wheels would lock up in the rear"; "[the vehicle would] fishtail when I would brake heavily"; "the rear end would move to the right"; "the back end broke away from the road and moved to the right"; "the vehicle swerv[ed] to the left"; "I skidded"; "the car was losing control and skidding."

[11]Similarly, the deficiencies in the other incident witnesses' testimony alluded to by Chrysler could be considered by the jurors in their assessment of the weight of the evidence. Chrysler argues that the witnesses should not have

Chrysler next argues that substantial similarity between the other incidents and the plaintiff's accident could not be established without expert testimony regarding the existence of the same defect, premature rear wheel lockup, in the witnesses' minivans and the causative relationship between the defect and the incidents. In Chrysler's view, the witnesses, because they were ordinary drivers, were not capable of identifying premature wheel rear lockup. Chrysler relies on *United States* v. *General Motors Corp.*, 841 F.2d 400 (D.C. Cir. 1988), in which the court said that "consumers were not capable of discerning whether what they experienced was an incidence of premature rear-wheel lock-up." *Id.* at 412.

The *General Motors* case is inapposite. There, the government brought an action under the National Traffic and Motor Vehicle Safety Act, alleging that General Motors vehicles had defective braking systems that caused premature rear wheel lockup. *Id.* at 401. The government "relied heavily" on other incident evidence, in the form of consumer complaints, to meet its burden of proving a defect. *Id.* at 406. The court held that the consumer complaints were insufficient to establish the existence of a defect. *Id.* at 411-412.

Here, the plaintiff did not rely on the other incident evidence to prove the existence of a defect in Chrysler minivans. Evidence of a defect was introduced in the form of expert testimony. The other incident testimony was put in evidence to establish notice, to corroborate the alleged defect, and to refute evidence that the minivan was designed without safety hazards. The judge instructed the jurors that they could consider the evidence only for these purposes during the testimony and again in the charge.[12] Thus, unlike the government in *General Motors*, the plaintiff did not rely on the other incident evidence to prove the defect. The jury could assess the similarity of the other

been able to testify to incidents in which they were not driving or were not present. The jury could discount the testimony in relation to the testimony regarding the witnesses' personal experiences with their vehicles.

Chrysler also argues that one of the witnesses should not have been permitted to testify to the "lemon law" action he brought against Chrysler and the settlement he obtained. The judge gave a strong limiting instruction on the jury's use of this evidence. See *Morea* v. *Cosco, Inc.*, 422 Mass. 601, 603-604 (1996).

[12]The judge also stressed to the jurors that they could consider the evidence only if they first found the incidents to be substantially similar to the plaintiff's accident.

incidents to the plaintiff's accident based on the explanation of premature rear wheel lockup presented to them by the plaintiff's expert. Further expert testimony identifying the defects in the witnesses' minivans and the causes of their incidents was not required.[13]

b. *Chrysler's expert statistician.* Chrysler argues that the judge erred by excluding the testimony of its expert. The expert analyzed the data contained in the NHTSA's fatal accident reporting system (FARS), which records various data about fatal accidents. The expert would have testified that, if Chrysler minivans had a propensity toward premature rear wheel lockup, then they would be involved in more accidents and more fatal accidents. She concluded from her analysis of the FARS data that Chrysler minivans were no more prone than other vehicles to fatal accidents on wet, snowy, or icy roads due to skidding or loss of control. Chrysler offered the expert's testimony to rebut the testimony of the other incident witnesses by showing that Chrysler minivans did not have a propensity to skid out of control due to rear wheel lockup.

The judge excluded the expert's testimony because it was based on speculation, was not relevant, and because the danger of the jurors being misled exceeded the probative value of the expert's opinion. We conclude that there was no abuse of discretion.

The judge could conclude that the factual foundation for the expert's opinion was insufficient. From the FARS database, the

---

[13]Chrysler argues the other incident evidence was irrelevant and misleading because the plaintiff failed to establish the statistical significance of the incidents. In Chrysler's view, evidence of other incidents of premature rear wheel lockup would tend to show a defect only if the brake lockup frequency exceeded that of other vehicles in the minivan's class. We disagree. Statistical evidence is not required when the evidence is offered to show notice or in rebuttal. Even when offered to corroborate the existence of a defect, we have never required the proponent to offer statistical evidence. The plaintiff can show that a product presents an unreasonable risk of harm through other evidence, including expert testimony.

Chrysler also challenges the plaintiff's counsel's use of the other incident evidence in his opening statement and closing argument. We agree that it was improper for counsel to imply that the evidence showed that Chrysler minivans were involved in an excessive number of accidents. However, the judge instructed the jurors that they could not use the evidence for this purpose. "We assume that the jury followed the judge's instructions." *Commonwealth* v. *Semedo*, 422 Mass. 716, 724 (1996). *Simon* v. *Solomon*, 385 Mass. 91, 110 (1982).

expert could not tell whether the circumstances of the accidents reported matched the circumstances of the plaintiff's accident. The FARS data did not contain any direct information on the use of brakes before or during the accidents, on any loss of control or skidding, or on the contribution of rear wheel lockup. The expert tried to isolate a comparable subset of data by making her own inferences regarding which accidents involved braking, skidding or rear wheel lockup. The expert, however, had no expertise in engineering or accident reconstruction. She said she used her common sense as a driver.

Given the infirmities in the data, the judge could conclude that the testimony was speculative. See *Commonwealth* v. *Gomes*, 403 Mass. 258, 274 (1988) (courts reluctant to admit statistical evidence where probabilities on which evidence depends are based on speculation); *Commonwealth* v. *Neverson*, 35 Mass. App. Ct. 913, 915 (1993) (judge properly excluded expert's opinions that did not relate to expert's field of expertise). All that the expert could conclude from her subset of data was that Chrysler minivans were no more prone to fatal accidents on wet, snowy, or icy roads than other vehicles. The plaintiff, however, never took the position that the defect he identified resulted in a disproportionate number of fatal accidents. The judge therefore also could conclude that the testimony was irrelevant and misleading.

Contrary to Chrysler's suggestion, this conclusion does not run afoul of *Kromhout* v. *Commonwealth*, 398 Mass. 687 (1986). In *Kromhout*, the plaintiff brought a wrongful death action, claiming that a defect in a State highway caused the accident in which her husband was killed. *Id.* at 687, 688-689. We concluded that it was error for the judge to admit evidence that, over the course of six years, twenty-one accidents occurred in the same location, and that this number of incidents was significant. *Id.* at 692. We said that the error was exacerbated by the judge's failure to admit the Commonwealth's statistics on the average daily traffic volumes on the road in question. *Id.* at 693-694.

Chrysler never sought to admit statistics on the number of minivans in use at the time of the six witnesses' incidents or the collective number of miles driven by all the minivans in service. The plaintiff never elicited expert testimony that the number of incidents reported by the six witnesses was significant. Moreover, as the judge stated in her ruling, had the expert been

able to whittle down the FARS data to include only accidents that involved braking, skidding, or rear wheel lockup, the evidence would have been admitted. We conclude that the judge did not err or abuse her discretion by excluding the expert's testimony.

c. *Recalls.* Over Chrysler's objection, the judge admitted evidence of recalls of minivans from the 1984 and 1985 model years. The purpose of the recalls was to install a shield over the HSPV. According to the recall letter, Chrysler determined that the shield was necessary because of the potential of a small stone's becoming entrapped in the HSPV. Chrysler notified owners that a contaminated HSPV could increase stopping distances during hard braking when the vehicle was lightly loaded. The plaintiff introduced the evidence of recalls to show that Chrysler was on notice that the HSPV could not be relied on to prevent premature rear wheel lockup. Chrysler argues that the evidence should not have been admitted because it was irrelevant and unfairly prejudicial. We do not agree.

We have held that, if a defect that was the subject matter of a recall was present in the plaintiff's vehicle at the time of the accident, evidence of the recall is admissible to show that the defect was present in the plaintiff's vehicle when it left the hands of the manufacturer. See *Carey* v. *General Motors Corp.*, 377 Mass. 736, 744 (1979). While the plaintiff offered such evidence on the issue of notice, not to show that the defect was present when it left Chrysler's hands, we conclude that the same standard of admissibility applies, and that the plaintiff met the standard.

Chrysler argues that the evidence was irrelevant because the defect that was the subject matter of the recall letter was not present in the plaintiff's minivan. The recall letter referred to the danger of a stone getting caught in the HSPV and increasing braking distances during light load operation. In contrast, the plaintiff alleged, as one theory of the accident, that snow was caught in his HSPV, causing premature rear wheel lockup under moderate load operation.

The jury could have concluded that the defect that was the subject matter of the recall existed in the plaintiff's vehicle. There was evidence that Chrysler was concerned about snow

contamination of the HSPV when it issued the recalls.[14] The plaintiff offered expert testimony that snow was probably caught in his HSPV at the time of the accident.[15] There was also evidence that Chrysler was concerned about premature rear wheel lockup in addition to increased braking distances.[16]

From all this evidence, the jury could conclude that Chrysler's concerns that prompted the recall were broader than those set forth in the recall letter. The evidence suggested that Chrysler was concerned about snow contamination and rear wheel skid. The plaintiff presented evidence from which the jury could conclude that these conditions were present in his vehicle on the day of the accident.[17] We conclude that the judge correctly admitted evidence of the recalls.

d. *Expert testimony criticizing the braking system.* Chrysler challenges the testimony of two expert witnesses, over Chrysler's objection, to numerous potential conditions which

[14]The deposition of Chrysler's brake testing engineer, which was read into the record, said that, when Chrysler tested the 1984 and 1985 minivans for the potential for stone contamination, "some evaluation was done as pertains to snow, ice or slush." After the recall, Chrysler conducted additional testing with respect to the possibility that snow could interfere with the performance of the HSPV. Soon after the plaintiff's minivan was manufactured in 1986 without a shield over the HSPV, Chrysler resumed installing shields. There was evidence that Chrysler's decision to install the shields in 1986 "derive[d] directly from the 1984, 1985 testing." In the 1990 version of the minivan's owner's manual, Chrysler referred to this shield as a "stone/snow shield" to "protect[] the valve . . . from . . . the packing of snow and slush."

[15]The plaintiff's expert testified that there was "a ninety percent chance" that snow was lodged in the HSPV on the day of the accident. The expert based his opinion on the fact that the plaintiff had been driving through snow and on the presence of snow on the vehicle.

[16]The brake testing engineer testified that before he tested the 1984 and 1985 minivans for the need for an HSPV shield, he was told about an incident where a stone caught in a vehicle's HSPV and caused rear wheel skid. He also testified that stones trapped in the HSPV could affect brake bias. A report following further testing of the HSPV states that there were "[i]nitial reports of early rear skid condition." In addition, a Chrysler brake evaluation report observed "rear skid" in a "low speed stop."

[17]There was evidence that the plaintiff's vehicle did not have an HSPV shield and that his HSPV was of the same basic design as that in the minivans recalled. The parties dispute whether the minivan was lightly loaded. Chrysler argues that it was heavily loaded because it carried five people and their luggage. The plaintiff characterizes the load as moderate because the minivan had the capacity to carry more people and more luggage. The question was a factual one, properly submitted to the jury. The parties do not dispute the application of severe braking in the plaintiff's accident.

could interact with the design of the HSPV and lead to rear wheel lockup. See note 5, *supra*. According to Chrysler, the plaintiff was allowed to show alleged design defects in the braking system without regard to whether the defects were present in the vehicle on the day of the accident. Chrysler relies on *Carey* v. *General Motors Corp.*, *supra*, to argue that the admission of "a litany of irrelevant defects caused substantial and unfair prejudice" and warrants a new trial. We disagree.

The expert testimony was offered to establish causation and to demonstrate that there was a design defect in the braking system. As to the design defect, the question was whether the braking system had a propensity to experience premature rear wheel lockup. If a propensity were found, the jury was then required to determine "whether this propensity, resulting from conscious design choices of the manufacturer, rendered the product unreasonably dangerous to its users." *Back* v. *Wickes Corp.*, 375 Mass. 633, 642 (1978). This raised a question whether the design of the braking system was "socially acceptable." *Id.* The experts' opinions about defects in the brake design that could cause premature rear wheel lockup under certain conditions was relevant to whether the product was unreasonably dangerous. The evidence was admissible.

As to causation, Chrysler argues that there was insufficient evidence to establish that the factors described by the expert witnesses, note 5, *supra*, actually, rather than potentially, caused the rear wheel lockup.[18] The expert testimony was that the rear wheels locked, causing the vehicle to turn and enter the opposite lane of traffic. There was testimony that the rear skid was caused by any one of or a combination of the factors and design defects described, note 5, *supra*. From this testimony, the jury could conclude that there was a "greater likelihood or probability [that the accident was caused by premature rear wheel lockup and that the premature rear wheel lockup] was due to causes for which the defendant was responsible than from any

---

[18]Chrysler points to the following weaknesses in the expert testimony: one expert stated that a stone was not lodged in the unprotected HSPV; one expert testified that he had "no idea" whether the HSPV was misadjusted; one expert testified that he did not inspect the rear springs to see if they were worn; one expert stated he had "no information that would indicate" that the rear springs had deteriorated at the time of the accident; one expert testified that he had not analyzed the weight distribution of the people in the minivan at the time of the accident; and one expert agreed that the curve of the road was insignificant.

other cause." *Carey, supra* at 740. The infirmities in the testimony, suggested by Chrysler, go to the weight, not admissibility, of the testimony. See *Stark* v. *Patalano*, 30 Mass. App. Ct. 194, 200 (1991) (challenge to testimony that rear wheel lockup was caused by faulty proportioning valve was one of weight, rather than admissibility of evidence).

e. *Memorandum and testimony of retired Chrysler engineer.* Chrysler argues that the judge should have excluded the testimony of Joseph Douglas as well as a memorandum he wrote. The plaintiff offered the evidence to further his theory that the premature rear wheel lockup he experienced was caused by the "increased efficiency" and rapid wear of his rear brake linings. See note 5, *supra.*

Douglas was a braking engineer at Chrysler for more than twenty years before he retired in 1979. Shortly before he retired, Douglas wrote a memorandum entitled "Proposed 1981 Model Year 10[-inch] and 11[-inch] Rear Brake Lining." The memorandum reported the results of Douglas's investigation of reports of rear brake "burn up" and rear wheel skid. Douglas collected data from leased vehicles, endurance vehicles, taxicabs, passenger vehicles, and station wagons — but not minivans, which had not yet been developed. He concluded that these Chrysler vehicles suffered from premature rear wheel skid after a short period of use. This tendency was accompanied by increased efficiency and rapid wear of the vehicles' rear brake linings. The plaintiff states that he offered Douglas's testimony and memorandum "to shed light on Chrysler's knowledge of the potential dangers posed by its design of the minivan braking system and its longstanding failure to address them."

Chrysler argues that Douglas's memorandum and his testimony were irrelevant, inflammatory, and unfairly prejudicial. Douglas was not employed by Chrysler in the early 1980s when the minivan was developed. He played no role in the design of the minivan's braking system. He was never employed in the department that developed the minivan. The linings used on the minivan's rear drum brakes were of a different size and manufacturer than those Douglas tested. Chrysler also specifically contests the judge's denial of its motion to strike Douglas's testimony that he told his boss that "we were killing people." We conclude that there was no error.

"The general rule to be followed in this Commonwealth is that all relevant evidence is admissible unless within an

exclusionary rule. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence." *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978). If the evidential value may be overwhelmed by its prejudicial effect, admissibility is to be determined in the sound discretion of the judge. *Green* v. *Richmond*, 369 Mass. 47, 60 (1975).

We conclude that Douglas's memorandum and testimony were relevant. They demonstrate a widespread tendency[19] of Chrysler vehicles to experience rear wheel skid because of over-efficient rear brake linings. The plaintiff demonstrated that the brake linings in his minivan were excessively worn. The jury could draw the inference that Chrysler was aware of the tendency of the rear wheels of its vehicles to lockup prematurely due to over-efficient rear brake linings, in accordance with one of the plaintiff's theories of the accident, and that this tendency was repeated in the minivan design. See note 5, *supra*.

The memorandum and testimony were not unfairly prejudicial. Chrysler argues that the evidence was prejudicial because, contrary to Douglas's testimony, Chrysler subsequently tested vehicles for rear wheel skid. This goes to the weight of the evidence, not its admissibility. As for Douglas's testimony that Chrysler was killing people, Chrysler objected to that statement arguing it was not responsive, not that it was inflammatory. Moreover, the witness implied that he made the statement after losing his temper. In its context, we do not view the statement as inflammatory. The judge was correct to admit Douglas's testimony and memorandum.

3. *Closing argument.* Chrysler next argues that the judge erred by permitting improper closing argument by the plaintiff.[20] In Chrysler's view, the plaintiff's counsel criticized Chrysler for not presenting an expert to compare the Chrysler minivan with other vehicles, after persuading the judge to exclude the testimony of Chrysler's expert.[21] We disagree. Counsel could argue the absence of evidence that premature rear wheel lockup

---

[19]Douglas testified that the tendency toward premature rear wheel skid "covered a whole bunch of vehicles."

[20]The plaintiff argues that Chrysler waived its rights by failing to include all its objections in its motion for a new trial. All Chrysler's arguments were contained in its motion for a new trial.

[21]The plaintiff's counsel stated, in part: "Now, do you hear one shred of evidence about any other van company having trouble with rear wheel skid with their van? . . . No. Do you hear one shred of evidence about any other passenger car having problems with rear wheel skid? No. Don't you think you

was a generic problem. Chrysler's expert would not have testified otherwise. Her testimony would have been that Chrysler minivans are no more prone than other vehicles to fatal accidents.

Chrysler further contends that the plaintiff improperly argued that Chrysler destroyed the memorandum written by Joseph Douglas. The evidence showed that the only copy of the memorandum was found in Douglas's files, and Chrysler admitted to routinely destroying documents. We conclude that counsel's argument was a fair inference drawn from the evidence. See *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994).

Chrysler argues that the plaintiff's counsel interjected his personal opinion regarding the veracity of the witnesses. We have set forth the challenged portions of the argument in the margin.[22] We see no error in counsel's argument that Joseph Douglas was courageous and that the six other incident witnesses were brave and conscientious. Counsel can comment on the courage and character of a witness so long as he does not argue, from personal knowledge, the witness's credibility. See *Commonwealth* v. *Lapointe*, 402 Mass. 321, 331 (1988). These comments did not run afoul of that standard. We also conclude that it was permissible for counsel to argue that it was a lie that Douglas was a disgruntled employee, and that he was appalled

---

would have heard it if this wasn't the only vehicle having the problem? . . . Chrysler is not shy about hiring expert witnesses to testify in cases. They would have found somebody to tell you."

[22]The plaintiff's counsel said that Joseph Douglas was "courageous" and that "Joseph Douglas speaks his mind. You get the truth." He said that the six other incident witnesses were "very brave" and "conscientious people." He described the plaintiff's statement to the police as "a moment of utter truth." He said that he "felt privileged" to see the plaintiff testify and that "[i]t was a spiritual experience for me to see him talk about his family." He said that any contention that Douglas was a disgruntled employee was "a lie." Finally, he said that he was "appalled at the overt suggestion that Ollie Langlois [according to the plaintiff a witness to the accident] wasn't even at the scene of the accident."

Chrysler also argues that the plaintiff's counsel suggested the existence of additional evidence when he said, "I'm an ordinary lawyer doing my job, and I now know, just through the resources available to me, of a flood of complaints." We disagree. This statement was made in connection with the seventy-five NHTSA complaints, the other incident testimony, and the expert testimony. Although strongly worded, counsel's argument fairly characterized this evidence as a "flood of complaints." When read in context, the argument was permissible.

by suggestions that a witness was not at the scene of the accident. Although counsel should have tempered his language, he could challenge the credibility of Chrysler's witnesses if his argument was supported by the evidence and the fair inferences therefrom. See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 422 (1978). Counsel explained the evidence showing that Douglas was not disgruntled. Counsel also argued the forcefulness of the testimony of the witness to the accident. Counsel's reaction to the plaintiff's testimony also does not rise to the level of prejudicial error. We can safely rely on the jury to distinguish hyperbole. See *Commonwealth* v. *Masello*, 428 Mass. 446, 452-453 (1998). See also *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982) ("The jury could be expected to take both [parties'] arguments with a grain of salt").

It was improper for counsel to suggest that Douglas's testimony and the plaintiff's statement to police were truthful, rather than arguing the credibility of their testimony. However, "[w]e review remarks alleged to be improper in the context of the entire argument, as well as in light of the evidence at trial and any instructions from the judge." *Commonwealth* v. *Pontes*, 402 Mass. 311, 316 (1988). The plaintiff's counsel did not say that he had personal knowledge of the veracity of the witnesses. The judge instructed the jury that closing arguments are not evidence and that "[i]f, at any time in the course of these events you heard an attorney express a personal belief in the credibility or believability of a witness, or in the merits or lack of merits of a particular claim, you should disregard it unless you as a collective body agree with that assessment . . . ." These instructions, which were echoed at the beginning of trial and before closing arguments, were sufficiently forceful to cure the error. Chrysler requested no additional instructions at the close of the charge.

Finally, Chrysler takes issue with the plaintiff's counsel's references to his personal life experiences.[23] These references were improper. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 451 (1993). However, as we discussed above, the judge

---

[23]The plaintiff's counsel said: "With God's help, when I'm on my deathbed, I'll be secure in the knowledge my children are happy and healthy and are going to have a nice life, I'll die a happy man." Later, plaintiff's counsel said: "Now, in the last twenty-two years I feel like the most beautiful word in the English language is Dad. I love that word. I've got a son away at college and when he calls me up and before he hangs up, he'll say, 'Love you, Dad.' I think 'I love you' is the most beautiful sentence in the English language. And

instructed the jury that closing arguments are not evidence and that the attorneys' personal beliefs should be disregarded. The judge also instructed that sympathy should not play a role in the jury's deliberations. The judge has the discretion to decide whether any action must be taken in response to improper argument and what that action should be. *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 572 (1971). The judge was faced with two improper comments in the course of a lengthy trial and lengthy closing arguments. We conclude that the judge did not abuse her discretion in her handling of counsel's improper comments. See *Harlow* v. *Chin*, 405 Mass. 697, 706 (1989).[24] While we affirm the judgments, we do not condone this type of closing argument. We view with disfavor unnecessary and hyperbolic embellishments. Counsel should argue the facts and fair inferences from the facts. See *Kelly, supra.*

4. *Wrongful death recovery.* The jury found that the plaintiff was ten per cent negligent, and that his negligence was a proximate cause of the deaths of his wife and children. The plaintiff is the sole beneficiary of their estates. See G. L. c. 229, § 1. Chrysler argues that the plaintiff, as a contributorily

the pleasure I get from hearing that big, rugged kid say to me, 'Love you, Dad.' "

[24]In a footnote in its brief, Chrysler also complains of plaintiff's counsel's reference in closing argument to seventy-five consumer complaints to the National Highway Transportation Safety Administration (NHTSA) that were excluded by the judge. The judge overruled Chrysler's objection, reasoning in part that, although the complaints themselves were excluded, the plaintiff's expert referred to them in answering a question posed on cross-examination by Chrysler. Counsel could therefore use them in closing argument.

Chrysler is correct that experts cannot base their opinions on facts not in evidence if the facts are not admissible. See *Vasallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 16 (1998). However, the expert did not base his opinion solely on the excluded complaints. He testified that the complaints led him to investigate "rear wheel skid or faults with the height proportioning valve." On direct examination, he testified that, to prepare himself to testify, he "reviewed the accident report that the police wrote, various depositions of Chrysler people, of people involved in the accident. I visited the site and made some measurements at the site. I reviewed some literature of complaints that were given to NHTSA . . . . I reviewed Federal Motor Vehicle Standard 105, which deals with hydraulic brakes for automobiles, and utility vehicles and trucks which have a slightly different requirement than automobiles. . . . I visited and inspected the vehicle, the parts that were left from it. I did testing of the height sensing proportioning valve to see if it was working properly or not. . . . I reviewed literature by [the American Automobile Association] and other people about the vehicle, the performance of it. I read the maintenance manual."

negligent sole beneficiary, is not entitled to recover under the Massachusetts wrongful death act, G. L. c. 229, §§ 1 et seq. We disagree.

We have held that comparative negligence is not a full or partial defense to a wrongful death action based on breach of warranty. See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353 (1983). The plaintiff proceeded on two theories: negligence and breach of warranty. See G. L. c. 229, § 2. In addition to finding that Chrysler was negligent, the jury also found that Chrysler violated its warranty, and that the plaintiff did not unreasonably use his minivan knowing of the defect. The verdict slip does not specify on which finding the jurors based the wrongful death awards. The wrongful death awards could have been based on the breach of warranty. Thus, there is no basis for eliminating the awards.

Even if the jury based its verdict on the negligence claim, the plaintiff's recovery would not be barred.[25] Chrysler's argument relies largely on *Arnold* v. *Jacobs*, 319 Mass. 130 (1946). In *Arnold*, the defendant caused his mother's death through the negligent operation of a motor vehicle. *Id.* at 132. We held that he could not share in the sum paid by his insurer to the administrator of the decedent's estate. *Id.* at 133. We conclude that *Arnold* is not applicable. *Arnold* was decided prior to the enactment of the comparative negligence statute. See G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1.

Chrysler, focusing on the part of the comparative negligence statute referring to "the amount of negligence attributable to the person for whose . . . death recovery is made," argues that the statute allows for the comparative negligence of a decedent, but not a beneficiary, and thus *Arnold* controls. We disagree. The statute directs the judge to compare the negligence of "each plaintiff" to the negligence of all the defendants. The statute further states that the "total of the plaintiff's negligence" and the defendants' negligence must be one hundred per cent. We therefore conclude that the Legislature intended for the statute to apply both to negligent decedents and negligent beneficiaries.

5. *Judgment nunc pro tunc*. Chrysler next argues that the judge should not have entered judgment nunc pro tunc. The jury returned a verdict in favor of the plaintiff on February 16, 1996.

---

[25]Chrysler does not argue that principles of comparative negligence require the plaintiff's wrongful death recovery to be reduced, as was his recovery for his own personal injuries. We therefore do not address the issue.

On February 28, 1996, Post Motors filed a motion for a hearing on fees and costs and for entry of judgment on its cross claim against Chrysler. On March 1, 1996, Chrysler filed motions for a new trial and for judgment notwithstanding the verdict. The judge issued a decision on Chrysler's posttrial motions on September 18, 1996. Final judgment did not enter, however, as Post Motors's cross claim against Chrysler was pending.

On March 20, 1997, the plaintiff moved for entry of separate and final judgment with regard to his claims against Chrysler, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).[26] On June 11, 1997, Post Motors's motion for entry of judgment on its cross claim was allowed. That order was amended, due to an error, on June 26, 1997. In the June 26 order, the judge also allowed the plaintiff's motion for entry of separate and final judgment against Chrysler and ordered that final judgment be entered nunc pro tunc, as of September 18, 1996, the date the court decided Chrysler's posttrial motions. In effect, the order allowed postjudgment interest to be calculated from September 18, 1996, rather than from March 20, 1997.

Chrysler argues that the trial judge should not have entered judgment retroactive to September, 1996. According to Chrysler, the plaintiff could have, but did not, move for entry of final judgment pursuant to rule 54 (b) earlier. As this failure "to timely move" for an entry was not caused by court proceedings, the defendant argues that judgment should not have entered until the date the rule 54 (b) motion was allowed.

To protect parties from prejudice caused by delay in judicial deliberations or proceedings, G. L. c. 235, § 4, allows a judgment to be entered nunc pro tunc.[27] *Almedia Bus Lines, Inc.* v. *Department of Pub. Utils.*, 348 Mass. 331, 338 (1965). After Chrysler's posttrial motions were decided, the plaintiff's claims

[26]Rule 54 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 820 (1974), provides in part: "Where more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

[27]General Laws c. 235, § 4, provides: "Every judgment or order of the supreme judicial, superior or land court shall bear date of the year, month and day when entered; but the court may order it to be entered as of an earlier day than that of entry."

against the defendant ceased at the trial level.[28] Had the judge not entered judgment nunc pro tunc, the plaintiff would have been prejudiced by losing the benefit of the judgment against Chrysler while the court resolved the remaining dispute between Post Motors and Chrysler. Chrysler has cited no authority for the proposition, implicit in its argument, that the plaintiff was required to seek a rule 54 (b) judgment immediately after the posttrial motion in order to obtain the full benefit of the judgment.[29] Thus, we conclude that Chrysler has failed to establish that the nunc pro tunc order was an abuse of discretion.

6. *Indemnity.* Chrysler also appeals from the judgment for Post Motors. Post Motors cross-claimed for indemnity. The judge determined that Post Motors was entitled to common-law indemnification. Chrysler argues that, if the judgment for the plaintiff is vacated, so too should be the judgment for Post Motors. Because we affirm the verdicts for the plaintiff, we need not address the issue. However, Post Motors raises two other issues related to the indemnification.

Post Motors argues that the indemnity judgment entitles it not only to attorney's fees and costs incurred during the trial, but also to attorney's fees and costs incurred on appeal. Post Motors properly requested appellate attorney's fees in its brief, see *Yorke Mgt.* v. *Castro,* 406 Mass. 17, 20 (1989), and we conclude it is entitled to them. "Indemnity . . . allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorney's fees." *Elias* v. *Unisys Corp.,* 410 Mass. 479, 482 (1991).

The judge concluded that Post Motors was entitled to indemnity from Chrysler on the claim for breach of warranty because Post Motors's liability "arose only from its derivative

---

[28]Chrysler filed a notice of appeal, relating to the plaintiff's claims against Chrysler, on September 20, 1996. Thus, even Chrysler recognized that the dispute between those parties ended on that date.

[29]Such action could have led to "piecemeal appeals." *Shawmut Community Bank, N.A.* v. *Zagami,* 419 Mass. 220, 225 (1994) ("The requirement that all claims be adjudicated prior to entry of a judgment is to avoid piecemeal appeals"). Indeed, when the plaintiff did ask for judgment to be entered pursuant to rule 54 (b), Chrysler opposed the motion, arguing that "the interests of sound judicial administration are better served by continuing to keep together all of these claims, which were tried together and should be considered on appeal together."

or vicarious relationship with Chrysler."[30] The judge stated that "Chrysler must indemnify Post Motors for all reasonable and necessary expenses incurred in Post Motors' defense of this action." The judge's order is sufficiently broad to enable Post Motors to recover to the extent allowed by common-law indemnity. Post Motors is therefore entitled to compensation for the entire amount of its loss, including reasonable attorney's fees. This guarantee "would ring hollow if it did not necessarily include a fee for the appeal." *Yorke, supra* at 19 (holding that G. L. c. 93A's provision for "a reasonable attorney's fee" encompassed fees for the appeal).

The other issue raised by Post Motors pertains to the calculation of prejudgment interest. The judge awarded prejudgment interest as of the date of the filing of the plaintiff's complaint. Post Motors contends that interest should be calculated on the basis of the dates on which the legal bills were paid, in accordance with *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837 (1986).[31] We agree, for the reasons set forth in that opinion. See *id.* at 841-842.

7. *Conclusion.* The judgments against Chrysler in favor of the plaintiff are affirmed. The judgment against Chrysler in favor of Post Motors is remanded for entry of judgment that calculates interest consistent with *Sterilite, supra.* The issue of Post Motors's request for attorney's fees and costs on appeal is remanded to the Supreme Judicial Court for Suffolk County.

*So ordered.*

---

[30]Prior to submitting the case to the jury, the judge ruled that, because of the "vicarious relationship between Chrysler and Post Motors," a jury finding against Chrysler on the breach of warranty count would result in the entry of a judgment against Post Motors.

[31]Post Motors represents that Chrysler and Post Motors agree that it was incorrect to calculate interest from the date of the filing of the plaintiff's complaint. There is no evidence of this agreement in the record. Chrysler does not contest Post Motors's argument in its brief.